BARNES, APPELLEE, *v.* CITY OF YOUNGSTOWN, APPELLANT.

(No. 81 C.A. 91—Decided January 28, 1982.)

*Mr. Richard D. Goldberg,* for appellee.

*Mr. Edward N. Sobnosky,* law director, and *Mr. Stuart J. Banks,* for appellant.

O'NEILL, J. On September 24, 1977, plaintiff-appellee, Henry L. Barnes, Jr., was about to enter his car which was parked on the corner of Oak Street and Livingston Street, when he stepped onto a concrete manhole cover which broke apart causing him to fall into the sewer. Plaintiff went to the hospital where he was treated for injuries. He was subsequently treated for three months by his physician for the back problems he developed as a result of the fall. Plaintiff's activities have been curtailed as a result of the accident.

Plaintiff filed a complaint on July 19, 1978, for damages against defendant-appellant, city of Youngstown. Defendant filed its answer on November 6, 1978.

The cause came before a jury on April 20, 1981. The jury rendered a verdict in favor of the plaintiff in the amount of $12,000.

Defendant filed a notice of appeal on August 5, 1981.

On his side of the case the plaintiff presented John Terlecky, a clerk in the street department of the city of Youngstown. Terlecky identified plaintiff's exhibits Nos. 4 through 8 as being records kept by the street department in the ordinary course of business. He further testified that each one of these records related to the catch-basin involved in this case, over a period from June 15, 1977 to October 26, 1977. Plaintiff's exhibit No. 4, dated June 15, 1977, indicated that the manhole lid on the catch-basin had been crushed. The exhibit further reflected that a barricade had been placed over the open manhole.

The next report, referenced to the catch-basin in question, appeared as plaintiff's exhibit No. 8. This report indicated that on September 24, 1977, the date of this accident, the catch-basin lid had been missing but was replaced with a cement lid at 12:15 p.m. Terlecky also testified that amongst the records of the city, there was no indication that anything had been done to the manhole in question between June 15, 1977 and September 24, 1977, other than the placement of a barricade on June 15, 1977.

The records of the defendant stand as proof that on June 15, 1977, the city had notice of a dangerous condition existing at the catch-basin in question. Based upon the report set forth in plaintiff's exhibit No. 8, the condition could have been corrected by the installation of a lid, but such was not done at any time over the three month period.

The defendant argues that it had taken a curative step by putting a barricade in place and that it had no notice that the barricade was missing. Defendant presented no evidence describing the barricade. Defendant presented no

evidence that any orderly or timely inspections had been conducted to ascertain that the barricade was in place. Apparently the barricade was portable because it was not in place on September 24, 1977.

The catch-basin in question was actually contiguous to and practically a part of the crosswalk at the intersection of Livingston and Oak Streets. It would be reasonable to conclude that it was within the general route of pedestrian traffic. The city was aware of the dangerous condition which amounted to a nuisance, but the city took no reasonable steps to repair the defect and afford citizens a safe means of travel.

The statute pertinent to the facts of this case is R.C. 723.01 which reads as follows:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

It should be noted that this statute mandates the city to keep ways *open* and *in repair*. The nuisance involved was the missing manhole cover, not the missing barricade. The missing manhole cover was the defect which should have been repaired. The failure to take adequate steps to protect users of the public way from the dangers of the known nuisance amounted to negligence, as did the prolonged period between notice and abatement.

"* * * after notice, the municipality would become liable only upon failure to exercise due care in remedying the defect." *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, 448 [28 O.O. 369].

In its second assignment of error, the defendant argues that the catch-basin in question was not covered by R.C. 723.01

because it was not an area set aside for pedestrian traffic. The evidence completely refutes this contention. As we stated before, to all appearances the subject catch-basin was contiguous to and a part of the crosswalk.

The third assignment of error complains that the verdict returned by the jury was excessive because no expert witness testified and there was evidence of only $600 in medical expenses. There is nothing in the record before us that there was any injection of passion or prejudice in the trial. Nor is there any evidence that the jury was misdirected or lost its way. We are simply left with defendant's bare assertion that the verdict was excessive.

In addition to the dollar cost of treatment, the plaintiff testified that when he fell into the manhole, he went in up to his armpits. He scraped and cut his arms, knees and legs, and his back was hurt. He was treated by his family physician over a three or four month period on a daily basis. At the time of trial, two and one-half years later, he was still taking medication for pain. He had missed four or five days of work. At trial, he described his condition as, "It's like a toothache aching back there." At the time of trial, he could not drive a car, lift things, or pursue his hobbies of swimming and bowling. His injury had caused such a disruption in his married life that, "It's on the basis of almost a divorce on that."

Defendant pursued very little cross-examination as to plaintiff's injuries or the effects of such. As the evidence stood, it was uncontradicted that there had been an injury, it was stipulated that the injury had caused medical expenses to be incurred, and there was evidence that the injury was causing prolonged pain and collateral marital problems. The trial judge instructed the jury to consider each and all of these elements.

If we were, under these circumstances, to hold that the verdict was excessive, we would only be substituting our

114

judgment for that of the jury. The basis of this assignment of error is the overruling of appellant's motion for new trial, one branch of which motion stated that the verdict was excessive "in view of the lack of expert testimony." As to the issue of amount of damages, a new trial may be granted upon the ground of "excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice." Civ. R. 59(A)(4).

The trial court was not required to grant a new trial absent an allegation of passion or prejudice.

"* * * If an excessive verdict is caused by passion or prejudice, he [the trial judge] *must* grant a new trial." (Emphasis *sic*.) *Cleveland Ry. Co.* v. *Burianek* (1919), 11 Ohio App. 168, 171.

However, once the trial judge has denied a new trial, "* * * the power of the reviewing court over the judgment * * * in order to reverse the trial court on the ground that the verdict was excessive must find that the verdict was not only excessive but that it appears to have been given under the influence of passion or prejudice." *Burianek, supra,* at 172-173.

In the case of *Toledo, C. & O. RR. Co.* v. *Miller* (1923), 108 Ohio St. 388, the Supreme Court at page 402, reasoned in a case such as the one at hand, as follows:

"* * * The assessment of damages is so thoroughly within the province of a jury that we do not feel, * * * that we have the right to enter this field, which is peculiarly that of the jury who heard the testimony, and to substitute our judgment for theirs, unless their judgment appears to have been the result of passion and prejudice and manifestly excessive."

The judgment is therefore affirmed.

*Judgment affirmed.*

LYNCH, P.J., and DONOFRIO, J., concur.