LOVE ET AL., APPELLANTS, *v.* MACK TRUCKS, INC. ET AL., APPELLEES.

(No. C-840530—Decided July 3, 1985.)

*William C. Knapp* and *Robert A. Gibson,* for appellants.

*Rendigs, Fry, Kiely & Dennis* and *Ralph F. Mitchell,* for appellees.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

Plaintiffs-appellants, Woodrow and Clarabelle Love, appeal from the judgment of the trial court which granted a directed verdict in favor of defendants-appellees, Mack Trucks, Inc. (the manufacturer and dealer) ("Mack") and C. T. Corporation, Mack's statutory agent, at the close of appellants' case-in-chief. We find no merit to any of appellants' three assignments of error; consequently, we affirm the judgment below.

On June 30, 1980, appellant Woodrow Love was operating a 1969 Mack tractor on Interstate 40 near Lexington, Tennessee. Appellant, who was employed by H & H Steel Company, was pulling a trailer loaded with thirty-eight thousand pounds of steel plates. Appellant had just left an expressway entrance ramp and was slowly accelerating the tractor-trailer onto the interstate when he felt the trailer break away from the tractor. The trailer swung wildly from side to side and eventually struck a guardrail. The front end of the tractor was forced upward onto its rear wheels and subsequently flipped over. Appellant suffered serious injuries.

Thereafter, appellants instituted this action against appellees to recover damages for personal injuries. Appellants alleged in their complaint that the accident occurred because the fifth wheel had detached from the tractor chassis and caused the trailer to jackknife. The complaint alleged that appellees were liable to respond in damages under alternate theories of products liability, negligence, and breach of express and implied warranties. The complaint contained a claim by Woodrow Love's wife, Clarabelle, for loss of consortium.

At trial, appellants abandoned their claims against appellees for negligence and breach of warranty, and elected to proceed solely on a theory of products liability. Appellants' position was simply that the truck was in a defective condition when sold by Mack and was unreasonably dangerous to the plaintiff when used for its intended purpose, and for that reason, Mack was strictly liable to appellants for their resulting physical harm. As noted, appellees' motion for a directed verdict at the close of appellants' case-in-chief was granted by the trial court. From the judgment entry dated June 19, 1984, appellants timely filed the instant appeal.

On appeal, appellants urge us to reverse the judgment and remand this case for a new trial on the ground that the lower court committed three errors. The first assignment of error is that the

trial court erred in directing a verdict for appellees for the reason that appellants had failed to prove that the truck contained a defect when it left the hands of the manufacturer; the second assignment is that the trial court erred in viewing the case as one which sounded in negligence, rather than strict products liability, merely because appellants alleged that Mack had failed adequately to warn consumers of a known danger; and the third assignment is that the trial court erred in directing a verdict for appellees on the ground that appellants had failed to prove that a weld failure had occurred. The resolution of appellants' first and third assignments depends upon an application of current products liability law to the evidence presented by appellants at trial; consequently, we will address these two assignments of error simultaneously.

Review of "[a] motion for a directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence. * * *" *Ruta* v. *Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66 [23 O.O.3d 115], paragraph one of the syllabus. The trial and appellate courts, without weighing the evidence, must construe the evidence most strongly in favor of the nonmoving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to such party. If so, a directed verdict should be granted or affirmed. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282 [21 O.O.3d 177]; *Humphrey* v. *Dent* (1980), 62 Ohio St. 2d 273 [16 O.O.3d 321]; Civ. R. 50(A)(4).

At trial, Woodrow Love testified that he inspected the tractor-trailer shortly after the accident and noticed that the fifth wheel, the large circular plate where a trailer is attached to a tractor, had detached from the tractor.

Appellant stated that he could see that the fifth wheel had been welded, rather than bolted, to the frame of the tractor. Appellant also testified that two tires on the driver's side of the tractor had blown out.

Appellants' expert witness is a consultant who engages in the reconstruction of accidents and the analysis of mechanical failures. The expert testified that in his opinion, the cause of the accident was the separation of the fifth wheel from the frame of the tractor. The expert also testified that the truck was defective when it was placed into the stream of commerce because Mack failed adequately to warn of the dangers of welding, rather than bolting, a fifth wheel to the tractor.

Mr. Love's employer, H & H Steel Company, purchased the truck in question from Mack several years prior to the date of the accident. A Mack dealership sold the truck to H & H Steel Company without a fifth wheel attached. However, when the Mack manufacturer shipped the truck to its dealership in Omaha, Nebraska, it included a three-page document which carefully described the correct method for mounting fifth wheels. This document contained instructions for bolting the fifth wheel to the frame, and ended with the following statement:

"WARNING

"Do not, under any circumstance, mount the fifth wheel by welding or use any method which entails mutilating frame siderails or cross-members."

The above warning was not given to H & H Steel Company by the Mack dealer. Rather, Mack placed a bright yellow sticker on the frame of the truck which stated:

"CAUTION
"DO NOT HEAT OR WELD FRAME
"DO NOT DRILL, CUT OR
"NOTCH FRAME FLANGE"

There was no evidence adduced at trial to indicate who had welded the fifth wheel to the tractor in disregard of the above warning and caution sticker. Appellants freely admit that Mack did *not* weld the fifth wheel to the frame of the truck. A senior project engineer responsible for the installation of fifth wheels at Mack testified that Mack installs fifth wheels on "only ten to twenty percent of their trucks." He indicated that Mack does not manufacture fifth wheels, but that they will purchase and install fifth wheels if requested to do so by a buyer. He testified that a fifth wheel could be safely welded to the frame of a tractor if done by an experienced, highly skilled welder. He stated, however, that Mack included the warning and the caution sticker as a safety measure, because Mack could not be sure that a highly skilled welder would actually do the welding. Finally, he testified that from Mack's point of view, the warning and caution sticker adequately warned consumers of the potential danger associated with welding a fifth wheel to the frame of the tractor.

Aside from the above evidence and testimony, appellants introduced no evidence which indicated that the truck was in a defective condition or was unreasonably dangerous when sold by Mack. There was no direct evidence that a weld failure occurred, or that if it did, that such failure was the cause of the accident. Finally, there was no evidence which even remotely suggested that Mack had welded the fifth wheel to the frame of the tractor.

In the seminal case of *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], the Supreme Court of Ohio adopted Section 402A[1] of the Restatement of the Law 2d, Torts, thus providing a cause of action in strict liability for injury from a product in this state. The doctrine of strict liability evolved to place liability on the party primarily responsible for the injury, *viz.,* the manufacturer of the defective product. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 464 [21 O.O.3d 285]. The policy underlying the doctrine is that the public interest in human life and safety can best be protected by subjecting manufacturers of defective products to strict liability in tort when their products cause harm to users or consumers. *Leichtamer, supra,* at 464-465.

Under Section 402A, as well as under our case law, a plaintiff must prove that the product was defective at the time it left the seller's hands. *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 156 [65 O.O.2d 374]; *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227 [35 O.O.2d 404]; Section 402A, *supra,* at Comment *g.* In addition, Section 402A (1)(b) imposes strict liability only where the defective product reaches "the user or consumer without substantial change

---

[1] Restatement of the Law 2d, Torts (1965) 347, Section 402A, provides:

"Special Liability of Seller of Product for Physical Harm to User or Consumer.

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

in the condition in which it is sold." *Temple* v. *Wean United, Inc., supra,* at 322. See, also, *Smith* v. *Ford Motor Co.* (1978), 59 Ohio App. 2d 41 [13 O.O.3d 118].

In order to prevail on a products liability cause of action against a manufacturer, an injured plaintiff need not prove that a product design is both in a defective condition and unreasonably dangerous. *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 464 [23 O.O.3d 403], at fn. 2. Rather, a plaintiff need only prove that the product design is in a defective condition. As stated in the syllabus of *Cremeans* v. *International Harvester Co.* (1983), 6 Ohio St. 3d 232:

"In determining whether a product design is in a defective condition, a single, two-pronged test should be used: under the consumer expectation standard prong, a defendant will be subject to liability if the plaintiff proves that the product design is in a defective condition because the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; under the risk-benefit standard prong, a defendant will be subject to liability if the plaintiff proves, by using relevant criteria, that the product design is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design. (*Knitz* v. *Minster Machine Co.,* 69 Ohio St. 2d 460 [23 O.O.3d 403], approved and followed.)"

Applying these guiding principles to the evidence presented by appellants in the instant case, we conclude that the trial court did not err in directing a verdict in favor of appellees. The record reveals that appellants failed to produce evidence that the truck was defectively designed, under either prong of the two-prong test as set forth in *Cremeans, supra,* when it left the hands of the manufacturer. Moreover, the record demonstrates that appellants failed to produce sufficient evidence to indicate that a weld failure occurred, or that a weld failure was the cause of the accident. To the contrary, the record indicates that the truck was free' from defects at the time it was sold, but that a fifth wheel was welded to the frame of the truck by an unknown person at some point subsequent to the sale. Construing the evidence most strongly in favor of appellants, reasonable minds could reach only one conclusion, and that conclusion is that Mack could not be held strictly liable for appellants' injuries. The first and third assignments of error are overruled.

In their second assignment of error, appellants maintain that the trial court erred in viewing the case as one which sounded in negligence, as opposed to strict liability, after it was alleged that Mack failed adequately to warn of the danger associated with welding a fifth wheel to the frame of a truck. We disagree.

"* * * '* * * [T]he rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care, and any tort result[ing] from the failure to meet this duty is, in essence, a negligent act.' * * *" *Knitz* v. *Minster Machine Co., supra,* at 466, fn. 5, citing *Temple* v. *Wean United, Inc., supra,* at 325. "* * * The absence of a warning does not, without more, provide a basis for liability; rather, evidence of warning is in the nature of an affirmative defense to a claim that a product is unreasonably dangerous. * * *" *Leichtamer* v. *American Motors Corp., supra,* at 469. In Ohio, a manufacturer is negligent when he has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect. *Sams* v. *Englewood Ready-Mix Corp.* (1969), 22 Ohio App. 2d 168 [51 O.O.2d 315].

In the case at hand appellants aban-

doned their claim of negligence against appellees. No evidence was presented at trial which indicated that the truck was defective when sold, much less that it contained latent defects. Moreover, there was no evidence introduced at trial to indicate what the standard of care was in 1969 with respect to the adequacy of warnings. Accordingly, the jury was not in a position to determine whether the warnings given by Mack were adequate. On the state of the record before us, we cannot say that the trial court erred when it ruled that the failure to warn adequately was essentially a negligent act, and not a required element to an action for products liability. The second assignment is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BLACK, P.J., KEEFE and KLUSMEIER, JJ., concur.