COX ET AL., APPELLEES AND
CROSS-APPELLANTS, *v.*
OLIVER MACHINERY COMPANY,
A.K.A OLIVER MACHINE COMPANY,
APPELLANT AND CROSS-APPELLEE.

(No. CA86-02-031—Decided
May 11, 1987.)

*Lindhorst & Dreidame* and *James F. Brockman*, for appellees and cross-appellants.

*Baden, Jones, Scheper & Crehan Co., L.P.A.*, and *Jack C. McGowan*, for appellant and cross-appellee.

*Per Curiam.* On October 1, 1979, plaintiff-appellee, Wayne Cox, was injured while operating an industrial saw manufactured by defendant-appellant, Oliver Machine Company. Appellee's employer, Magnode Products, Inc. ("Magnode"), had purchased the saw — especially designed for cutting aluminum extrusions — from appellant. The saw was equipped with both automatic and manual electrical cycles. The saw miscycled or "double-cycled" during its automatic mode while appellee attempted to remove a piece of aluminum from the blade area. Appellee's left hand was caught under a clamp and his fingers were amputated when the blade moved across his hand.

Appellee and his wife filed suit against appellant under the theories of negligence, breach of warranties, and strict products liability, seeking damages of $1,000,000. At the close of appellee's case-in-chief, appellant moved for a directed verdict on the issue of negligence and products liabilty. The trial court denied the motion. During its defense, appellant argued that the saw miscycled because Magnode had made substantial alterations to the machine. Appellant also claimed that appellee knew of the saw's tendency to miscycle while on automatic mode, that he was negligent and that he had assumed the risk by using the saw with such knowledge.

The jury returned verdicts of $200,000 for appellee and $100,000 for his wife on her claim for loss of consortium. The jury also answered interrogatories which stated that the saw was in a "defective condition" when manufactured and sold to Magnode and that the defective condition was a proximate cause of appellee's injuries. The jury further found that appellant was negligent but that appellee had neither assumed any risk nor negligently contributed to his own injury. Finally, the jury concluded that the saw was being used in a reasonably foreseeable manner when the accident occurred and that Magnode's acts or

omissions were not an intervening or superseding cause of the accident.

Appellant then moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Appellee, in turn, filed a motion for prejudgment interest. Except for the damages awarded to appellee's wife, the trial court denied appellant's motion for judgment notwithstanding the verdict. With respect to Mrs. Cox's damages, the court found that the jury acted with "passion and prejudice" and had granted an excessive award. The court ordered a remittitur of $60,000 or, in the alternative, a new trial. The court also denied appellee's motion for prejudgment interest.

Appellant has timely appealed the jury's verdict and raises five assignments of error. Appellee filed a cross-appeal with respect to the denial of his motion for prejudgment interest. Appellant's assignments of error read as follows:

First Assignment of Error: "The trial court erred to the prejudice of defendant-appellant in overruling its motion for directed verdict made at the close of plaintiff-appellee's case."

Second Assignment of Error: "The trial court erred to the prejudice of defendant-appellant in overruling its motion for judgment notwithstanding the verdict or for a new trial."

Third Assignment of Error: "The trial court erred to the prejudice of defendant-appellant in refusing to admit testimony concerning statements made by plaintiff's co-workers concerning the miscycling of the saw."

Fourth Assignment of Error: "The trial court erred to the prejudice of defendant-appellant in refusing to admit Exhibit G., a memorandum of a meeting concerning the saw."

Fifth Assignment of Error: "The judgment is against the manifest weight of the evidence and contrary to law."

Appellant's first assignment of error claims that the trial court improperly denied the motion for a directed verdict at the close of appellee's case on the negligence and products liability claims.

In ruling on a directed verdict — or, in our case, considering such a ruling on appeal — a court must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds can come to but one conclusion on the evidence submitted, that conclusion being adverse to the non-moving party. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467; *Love* v. *Mack Trucks, Inc.* (1985), 27 Ohio App. 3d 198, 27 OBR 238, 500 N.E. 2d 328; and Civ. R. 50(A)(4). If reasonable minds can reach different conclusions, the matter must be submitted to a jury. *TLT-Babcock, Inc.* v. *Service Bolt & Nut Co.* (1984), 16 Ohio App. 3d 142, 16 OBR 149, 474 N.E. 2d 1223. The court considers the motion without weighing the evidence or determining the credibility of witnesses. *Eldridge* v. *Firestone Tire & Rubber Co.* (1985), 24 Ohio App. 3d 94, 24 OBR 164, 493 N.E. 2d 293; *Love, supra.* A motion for a directed verdict raises a question of law because it examines the materiality of the evidence rather than the conclusions to be drawn from the evidence. *Eldridge, supra.* Thus, the court does not determine whether one version of the facts presented is more persuasive than another; rather, it determines whether only one result can be reached under the theories of law presented in the complaint. *Id.*

Appellant submits that a directed verdict was required on the issue of products liability since the saw had been substantially altered and because it was unforeseeable that appellee would continue to use a saw that miscycled. Such position requires an examination of Ohio law as it relates to strict products liability in tort.

30

An analysis of Ohio law begins with the seminal case of *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, in which the Ohio Supreme Court adopted 2 Restatement of the Law 2d, Torts (1965) 347, Section 402A. Briefly, Section 402A holds that one who manufactures or sells a product in a defective condition is subject to liability for physical harm caused to the ultimate user or consumer if the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. The *Temple* court found that the plaintiff's injuries — incurred while the plaintiff operated a punch press — were the result of her employer's action of altering the existing location of the press's activation buttons. According to the court, the employer's alterations constituted a "substantial change" or modification within the meaning of Section 402A and relieved the manufacturer of any liability.

Although Section 402A speaks of products sold in a "defective" condition, there was a conspicuous absence of any original defect in the press when manufactured and sold by the defendant in *Temple.* To the contrary, the Supreme Court found "* * * that there was no original defect of any sort in the punch press, * * *" *Temple, supra,* at 323, 4 O.O. 3d at 469, 364 N.E. 2d at 271, and that the employer's modification of the activation guarding method was the "* * * sole responsible cause of the maiming of * * * [the plaintiff]." *Id.*

The *Temple* decision did not answer all questions associated with a strict products liability claim. Since the facts in *Temple* did not involve a product sold or manufactured in a defective condition, the decision did not "* * * provide a legal standard for the application of strict liability in tort to design defects." *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 464, 23 O.O. 3d 403, 405, 432 N.E. 2d 814, 817, certiorari denied (1982), 459 U.S. 857.

The court in *Knitz* established a two-prong test for determining whether a product design is in a defective condition. Under one prong, the design is in a defective condition when the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Under the second prong, the design is defective when the benefits of the challenged design do not outweigh the risks inherent in the design. *Id.* at syllabus. See, also, *Cremeans* v. *Internatl. Harvester Co.* (1983), 6 Ohio St. 3d 232, 6 OBR 302, 452 N.E. 2d 1281. Factors relevant to a determination of whether a product design is defective under the risk-benefit standard include, among others, the likelihood that the design will cause injury, the gravity of the danger posed, the cost of an alternative design, and the new or additional harms resulting from the alternative design. *Id.; Knitz, supra.*

Those Supreme Court cases involving strict products liability causes of action have generally treated such claims within the context of summary judgment proceedings. Normally, such claims have survived manufacturers' summary judgment motions when the plaintiff raises sufficient allegations in the pleadings and evidence to establish a genuine issue of material fact regarding the existence of a design defect. *Id.; Cremeans, supra.* The court has also found that a substantial alteration subsequent to the manufacture and sale of the product will relieve the defendant-manufacturer from liability and will support summary judgment in favor of the manufacturer. However, this has occurred where the plaintiff fails to make out a prima facie demonstration of a design defect and fails to go beyond a mere allegation that such a defect exists. See *King* v. *K.R.*

*Wilson Co.* (1983), 8 Ohio St. 3d 9, 8 OBR 79, 455 N.E. 2d 1282. Summary judgment for the manufacturer is also appropriate where the product is used in a capacity which is unforeseeable by the manufacturer and completely incompatible with the product's design. See *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 15 OBR 179, 472 N.E. 2d 707.

In the case at bar, appellant never moved for summary judgment. It is unclear whether the absence of a summary judgment motion was the result of trial strategy or a realization that the motion would have been denied. As a general rule, however, the case law clearly indicates that where the record sufficiently supports a claim of a design defect, the existence of such a defect and whether it was the cause of the plaintiff's injuries remain questions for the fact finder.

Donald Barr, appellant's manager of product assurance, acknowledged on cross-examination that the saw had been delivered to Magnode without any tools to assist the operator in removing waste or scrap material from the saw blade area. Appellee apparently elicited this testimony in support of his contention that appellant was negligent, or that the product thereby had an inherent design defect. The obvious implication is that the failure to provide such tools, coupled with the foreseeability that the operator would place his hands near the blade area, supports a finding of negligence. This position is, however, untenable, since the manufacturer's duty is " ' * * * * to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended.' " *Temple,*

*supra,* at 326, 4 O.O. 3d at 471, 364 N.E. 2d at 273, quoting *Gossett* v. *Chrysler Corp.* (C.A. 6, 1966), 359 F. 2d 84, 87.

Appellee's expert witness, Daniel Durbin, described the saw's point of operation — the area where potential hazard might exist — as the blade area. Durbin stated that the object of the saw's safety features was to prevent the operator's entry into the point of operation. This could be accomplished by the use of barrier guards which prevented physical access to the point of operation and presence-sensing guards which would interrupt the machine's operation when the guards sensed a foreign object near the point of operation. Durbin discussed several barrier and presence-sensing guards which were not on the saw and would have been more effective in preventing entry to the blade area than those installed on the saw by appellant. These optional guards were both available and economically feasible when appellant manufactured the saw. Durbin stated that appellant's guards were inadequate and would not prevent the operator from reaching into the point of operation.[1]

Durbin testified that the saw was more dangerous than the ordinary consumer would expect when normally used and that as manufactured, the saw's risks outweighed its benefits. Durbin further stated that the saw was defectively designed due to its ineffective point-of-operation guarding, and that the machine was unreasonably dangerous. The failure to include the various point-of-operation guards he discussed was, according to Durbin, a contributing factor to the accident.

---

[1] Although it has been determined that the absence of adequate point-of-operation guards raises an issue with respect to whether the lack thereof constitutes a design defect, see fn. 3, *infra,* a question arises as to how many guards are sufficient. Obviously, appellant could have placed so many guards on the saw that it could possibly not have even been used, or the production of the saw could conceivably become cost prohibitive because of an overburdening safety factor.

Finally, Durbin claimed that it was reasonable to foresee that the operator would occasionally place his hands near the blade area while operating the saw despite the saw's automatic cycle.

Appellant claimed that Magnode made substantial changes to the saw by replacing key electrical switches with improper substitutes. According to appellant, these changes caused the saw to miscycle during its automatic mode, resulting in appellee's injuries. The substantial changes, appellant argues, relieve it of any liability under the *Temple* decision. However, appellee countered with evidence that "routine maintenance," including the replacement of the switches in question, could be performed by Magnode personnel. Accordingly, the types of repair performed by Magnode were foreseeable by appellant and any substantial alterations by Magnode should not, according to appellee, relieve appellant of strict liability. Furthermore, appellee contends that any substantial alterations do not absolve appellant since the claimed design defect, *i.e.*, lack of adequate point-of-operation guards, existed in an unaltered portion of the saw which had not been repaired or changed by Magnode.

A recent decision which is both procedurally and substantively similar to the case at bar is *Love, supra.* The plaintiff truck driver was injured when his vehicle's fifth wheel (the large circular plate where a trailer is attached to the truck) detached and an accident occurred. The defendant manufactured the truck without a fifth wheel and placed a warning label on the frame which cautioned against welding to the frame. An unknown third party later welded the fifth wheel to the frame after the defendant sold the truck. The plaintiff sued the defendant under a theory of strict products liability. The plaintiff's expert, an accident reconstruction expert, testified that the accident was caused by the fifth wheel's separation from the truck frame. The expert also testified that the truck was defective when sold because the defendant failed to adequately warn of the dangers of welding, rather than bolting, a fifth wheel to the frame. At the close of plaintiff's case, the defendant moved for and was granted a directed verdict.

The Court of Appeals for Hamilton County held that the plaintiff failed to introduce any evidence indicating that the truck was in a defective condition or unreasonably dangerous when sold by the defendant. Reviewing *Temple, supra,* and its progeny, the court found that the plaintiff must prove that the product design was in a defective condition in order to prevail on a products liability claim against the manufacturer. Such is done, the court held, by satisfying one of the two prongs of the test set forth in the *Knitz* and *Cremeans* cases, *supra.* The record revealed that the plaintiff failed to produce any evidence that the truck was defectively designed under either prong of the test. "To the contrary, the record indicate[d] that the truck was free from defects at the time it was sold, * * *" *Love, supra,* at 202, 27 OBR at 241-242, 500 N.E. 2d at 332, that the truck had been altered by a third party, and that reasonable minds could reach only one conclusion, that being the manufacturer could not be held strictly liable for the plaintiff's injuries. The directed verdict was therefore correctly granted in favor of the defendant.[2]

Appellee's expert testified that the

---

[2] In *Temple, supra,* at 323-324, 4 O.O. 3d at 469-470, 364 N.E. 2d at 271-272, the Supreme Court mentioned that its decision was in harmony with the decisions of other courts wherein *directed verdicts* in favor of the manufacturers were upheld since there was evidence of substantial changes in the products and because there was *no evidence* tending to prove that the products were defectively designed when manufactured and

saw's design was defective due to lack of adequate point-of-operation guards.[3] The lack of adequate and sufficient guards contributed to appellee's injuries since it was foreseeable that the saw's operator would place his hands in the saw's danger zone. Appellant's expert even acknowledged that the existing guards on the saw would not have prevented appellee from placing his hand in the danger zone. Thus, unlike the *Love* decision and those cited in *Temple,* we have a case where there is evidence of both an original design defect and a substantial alteration, both of which are asserted as proximate causes of the accident.

We have, of course, no knowledge of how the Supreme Court would rule on a case of this nature. It is uncertain whether the court would require an injured plaintiff to prove that the design defect was the sole proximate cause of his injuries or whether the manufacturer must demonstrate that a substantial alteration was the sole proximate cause. See *King, supra,* at 12-13, 8 OBR at 81-82, 455 N.E. 2d at 1284-1285 (C. Brown, J., dissenting). Causation is an obvious element of a Section 402A cause of action, and, to a certain extent, a substantial alteration or modification of the product will act as an intervening and superseding cause. However, the alterations in the case at bar were foreseeable inasmuch as appellant acknowledged that Magnode could repair and maintain the saw. Appellant's witnesses further admitted that the operator might reach into the blade area despite warning labels on the saw cautioning against such action. Since the alterations were foreseeable, we cannot say, as a matter of law, that they act as a superseding cause relieving appellant of all liability,

given the current state of strict products liability law in Ohio.

Mindful that we must construe the evidence most strongly in favor of appellee, we conclude that reasonable minds could reach different conclusions as to whether appellee had proved the existence of a design defect and whether the design defect caused appellee's injuries. Since reasonable minds could differ, the matter should be left to the trier of fact. Accordingly, the court correctly denied appellant's motion for a directed verdict.

Appellant's second assignment claims that the court erred in denying its motion for judgment notwithstanding the verdict, presenting the same arguments raised in the first assignment. In the alternative, appellant moved for a new trial, arguing that the damages were excessive and granted as the result of jury passion and prejudice.

Turning first to appellant's motion for judgment notwithstanding the verdict, the standard of review is much the same as is that for a directed verdict. The court is required to construe the evidence most strongly in favor of the party against whom the motion is made. *Cataland* v. *Cahill* (1984), 13 Ohio App. 3d 113, 13 OBR 131, 468 N.E. 2d 388. Where the evidence is such that reasonable minds can reach different conclusions, the motion must be denied. *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 74 O.O. 2d 427, 344 N.E. 2d 334.

As noted above, appellant argues that Magnode's substantial alterations to the saw relieve it of any liability and that it was unforeseeable that appellee would use the saw when it miscycled. Appellee's position is that the saw was defective notwithstanding any altera-

---

sold. See *Keet* v. *Service Machine Co.* (C.A. 6, 1972), 472 F. 2d 138; and *Hardy* v. *Hull Corp.* (C.A. 9, 1971), 446 F. 2d 34.

[3] The lack of adequate point-of-opera-

tion guards is sufficient to raise a question of the existence of a design defect. See *Knitz, supra.*

tions, and that both Magnode's alterations and appellee's actions were foreseeable since appellant's representatives admitted that the owner could perform certain repairs and maintenance and that the operator would occasionally reach into the blade area.

Furthermore, the jury made the following findings as reflected in the interrogatories:

"1. Was the 'Saw' at the time of manufacture and sale in a defective condition?

"Yes.

"2. Were the acts and/or omission of plaintiff's employer Magnode, a superseding and intervening cause of the accident on October 1, 1979?

"No.

"3. If the answer to question #1 was 'yes' was the defective condition a proximate cause of plaintiff's injuries?

"Yes.

"4. Was the 'Saw' being used in a reasonably foreseeable manner at the time of the accident?

"Yes.

"5. Regardless of the defect in the 'Saw' did the plaintiff assume the risk involved?

"No.

"6. Was the defendant Oliver Machine Co. negligent?

"Yes.

"7. Were, the act and/or omission of plaintiff's employer, Magnode, a superseding and intervening cause of the accident?

"No.

"8. What was the total amount of damages sustained by the plaintiff regardless of which party caused it?

"$200,000.

"9. Did the plaintiff commit any act of negligence which directly and proximately caused his own injury?

"No."

The purpose of jury interrogatories is, of course, to test the correctness of a general verdict and enable the trial court to determine whether the verdict shall stand. *Ragone* v. *Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St. 2d 161, 71 O.O. 2d 164, 327 N.E. 2d 645. The interrogatories obviously support the jury's general verdict, although we do find the responses somewhat astonishing. Nevertheless, we must yield to the findings of the trier of fact which are reconcilable with the general verdict notwithstanding our own inclination to conclude otherwise.

For the same reasons raised in our discussion of the first assignment of error, we find that reasonable minds could reach different conclusions on whether there was a design defect in the unaltered portion of the saw which proximately caused appellee's injuries. The denial of appellant's motion for judgment notwithstanding the verdict is affirmed.

In the alternative, appellant requested a new trial based upon, among other grounds, excessive damages awarded under the influence of passion and prejudice. Excessive damages awarded under the influence of passion and prejudice are sufficient grounds for a new trial. *Clay* v. *B & O RR.* (Dec. 8, 1986), Warren App. No. CA85-09-057, unreported; Civ. R. 59(A)(4). The new trial may be limited to the issue of damages when appropriate and allow issues tried free from error to stand. *Mast* v. *Doctor's Hosp. North* (1976), 46 Ohio St. 2d 539, 75 O.O. 2d 556, 350 N.E. 2d 429. The trial court concluded that the $100,000 damages awarded to appellee's wife were the result of the jury acting "with passion and prejudice." The court considered the amount excessive and ordered a remittitur of $60,000 or, in the alternative, a new trial. Once the court found that the jury acted out of passion and prejudice in its award, the court had no choice but to order a new trial.

In *Lance* v. *Leohr* (1983), 9 Ohio App. 3d 297, 9 OBR 544, 459 N.E. 2d

1315, paragraph two of the syllabus, the court held that:

"When a trial court considers a verdict to be so excessive as to have been rendered under the influence of passion or prejudice, the verdict should be set aside and a new trial granted."

When the excessive verdict is caused by passion and prejudice, the trial court must grant a new trial. See *Barnes* v. *Youngstown* (1982), 4 Ohio App. 3d 112, 114, 4 OBR 202, 204, 446 N.E. 2d 790, 793; *Clay, supra.* If the verdict is excessive, but not influenced by passion or prejudice, the court may reduce the verdict by remittitur to any amount warranted by the evidence. *Lance, supra,* paragraph one of the syllabus.

Since the trial court found passion and prejudice, its only alternative was to set aside the damages awarded to appellee's wife and grant a new trial on the issue of damages. However, error as to one issue need not attach to another, and it does not necessarily follow that the rest of the verdict is tainted by the error regarding appellee's wife's damages. *Trauth* v. *Dunbar* (1983), 5 Ohio St. 3d 68, 5 OBR 123, 448 N.E. 2d 1368. Accordingly, the court erred in ordering a remittitur; appellant's motion for a new trial — limited in scope to the issue of damages for appellee's wife — should have been granted. In this regard, the second assignment of error is well-taken and is sustained.

Appellant's third assignment claims that the trial court erred by refusing to admit certain statements by a Magnode employee into evidence as an exception to the hearsay rule. This assignment concerns the testimony of Francis Crowley, appellant's service manager. At Magnode's request, Crowley was sent to Magnode on October 9, 1979, eight days after appellee's accident, to conduct a check of the saw's electrical system. While Crowley was running the saw on automatic cycle, Arlie Fraley, Magnode's electrician who was present during the test, commented that he knew the cause of the saw's miscycling: a gate gauge switch was loose, a switch which he had replaced on six different occasions.

At trial, appellant attempted to introduce Fraley's statement through Crowley's testimony. The trial court ruled that such testimony was inadmissible hearsay. Fraley was not subpoenaed and did not testify.[4]

Appellant's position is that Fraley's statement was a description or explanation of an event or condition by Fraley while perceiving the event and is therefore admissible under Evid. R. 803(1) as a present sense impression.[5] Appellant sought to use Fraley's statement to support its position that Magnode alterations were the cause of appellee's accident.

The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness. The key to

---

[4] We are somewhat perplexed by appellant's trial tactics in attempting to introduce this statement. Appellant did not subpoena Fraley to testify or otherwise preserve his testimony by means of a deposition. The statement was extremely crucial to appellant's defense and the failure to present it to the jury was obviously fatal to appellant's case.

[5] Evid. R. 803(1) states that:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."

the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to relect on the event perceived — a fact which obviously detracts from the statement's trustworthiness.

Fraley's statement was indisputably made while observing the saw's operation on October 9, and would certainly be pertinent to any miscycling or irregular operation at that particular time. However, it is impossible to allow its admission as a present sense impression of the October 1 miscycling. Furthermore, even if the switch mentioned by Fraley was the cause of the miscycle on October 9, it does not necessarily follow that the same switch caused the miscycle resulting in appellee's accident. Simply because Fraley's statement may be trustworthy as to the saw's operation during Crowley's visit, the same degree of trustworthiness does not attach to a miscycle which occurred eight days prior to the utterance. According to the rule, the statement is admissible "unless circumstances indicate lack of trustworthiness." Over a week passed between the accident and Fraley's statement. Such a period certainly is not within the scope of the minimal lapse of time contemplated by the rules of evidence in order for a present sense impression to be admitted as an exception to the hearsay rule. The third assignment of error is accordingly overruled.

Hearsay is also the subject of the fourth assignment of error. Appellant submits that the trial court erred in refusing to admit a memorandum into evidence under the business records exception to the hearsay rule. The memorandum or report was written by Crowley to summarize his October 9 inspection of the saw.

Evid. R. 803(6) provides that certain business reports or records are admissible if they are reports of:

"* * * acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * report * * *."

According to Crowley, he wrote the report on October 9 but did not have it typed until three weeks later. Appellant's purpose for admitting the report is obvious: the report reflects statements by Magnode employees which would support appellant's position that the saw's irregular cycling was caused by Magnode alterations and that Magnode employees were aware of the saw's propensity to miscycle. Included in this report, among other things, were Fraley's statements which were the subject of the third assignment of error.

Evid. R. 803(6) requires that the source of information be "a person with knowledge." Crowley is obviously the author of the report and a person with knowledge of the report's contents. However, the report contains assertions by someone, *i.e.,* Magnode employees, other than the report's author. When these assertions are offered to prove their truthfulness, they can only be admitted if they themselves come within an exception to the hearsay rule. In this case at bar, Magnode employees, acting as the suppliers of information to Crowley, were not acting within appellant's course of business. Even though such reports have been made within appellant's course of a regular business, the statements of Magnode employees contained therein are not admissible unless they come within a separate excep-

tion to the hearsay rule since they constitute hearsay within hearsay. See Evid. R. 805.

A decision whether to admit a report under Evid. R. 803(6) is within the sound discretion of the trial court and such determination will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Cleveland v. Huff* (1984), 14 Ohio App. 3d 207, 14 OBR 235, 470 N.E. 2d 934; *Natl. City Bank* v. *Fleming* (1981), 2 Ohio App. 3d 50, 2 OBR 57, 440 N.E. 2d 590. We perceive no abuse of discretion by the trial court and accordingly refuse to disturb its decision denying the admission of Crowley's report. The fourth assignment of error is overruled.

Appellant's final assignment of error claims that the judgment was against the weight of the evidence and contrary to law. The parties claimed opposing theories regarding the cause of appellee's accident. Appellant points out that Magnode made substantial changes to the saw which caused the miscycle resulting in appellee's injury. Appellee's evidence claimed that, notwithstanding any alterations by Magnode, the saw contained an original design defect, unaltered by Magnode, which was a proximate cause of the accident. As we previously pointed out, the opposing theories require the trier of fact to make a determination with respect to the proximate cause of the injuries and whether such proximate cause would, as a matter of law, either absolve appellant or hold it liable.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273. We find that there was sufficient evidence in the record to support the judgment and that the judgment was not contrary to law. The fifth assignment of error is therefore overruled.

Appellee's cross-appeal raises one assignment of error, asserting that the trial court improperly denied a motion for prejudgment interest filed by appellee and his wife. On two different occasions prior to trial, appellee and his wife offered to settle their claims for $500,000. Later, during discussions between the parties' attorneys, appellee's counsel indicated that an amount considerably less than this sum would be acceptable in settlement of the claims. Appellant refused any settlement until the day of the trial when it offered $10,000 to appellee. According to appellee, this, coupled with his allegation that appellant failed to reveal an important safety feature on the saw, reflects appellant's failure to make a good faith effort to settle the case.

R.C. 1343.03(C), relative to prejudgment interest, states the following:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

"The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court." *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, 159, 25 OBR 201, 203, 495 N.E. 2d 572, 574; *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 19 OBR 123, 482 N.E. 2d 1248. A reviewing court

will not overturn a trial court's determination on this issue unless it connotes an abuse of discretion. *Kalain, supra.* The trial court concluded that appellant made a good faith effort to settle particularly because appellant had good cause to believe it had defenses to appellee's claim which could relieve it of all liability. Although appellant failed to disclose the existence of one of the saw's safety devices during discovery, there is no indication that such was an intentional and overt omission by appellant. Appellant otherwise appears to have fully cooperated with discovery, which is required in order to demonstrate a good faith effort to settle. *Id.* See, also, *Edgerson* v. *Cleveland Elec. Illum. Co.* (1985), 28 Ohio App. 3d 24, 28 OBR 34, 501 N.E. 2d 1211.

The trial court's decision to deny interest must be so violative of logic that it evidences a perversity of will, defiance of judgment, and the exercise of passion or bias in order to amount to an abuse of discretion. *Huffman, supra.* We find no such abuse of discretion here and refuse to overrule the trial court's decision denying prejudgment interest. The sole assignment of error in the cross-appeal is therefore overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and the cause is remanded for further proceedings according to law and not inconsistent with this decision.

> *Judgment affirmed in part,*
> *reversed in part,*
> *and cause remanded.*

JONES and NICHOLS, JJ., concur.

KOEHLER, P.J., concurs in part and dissents in part.

NICHOLS, J., of the Madison County Court of Common Pleas, sitting by assignment in the Twelfth Appellate District.

KOEHLER, P.J., concurring in part and dissenting in part. The record before this court is devoid of independent indicia of passion or prejudice which may have influenced the jury's award of damages to the appellee spouse.

Passion or prejudice is a matter of proof, not assertion, and proof is not made from an empty record. Thus, the only probative support for the conclusion of "passion or prejudice" is the size of the verdict. The size, per se, will not suffice for proof of passion or prejudice. *Pearson* v. *Cleveland Acceptance Corp.* (1969), 17 Ohio App. 2d 239, 245, 46 O.O. 2d 411, 415, 246 N.E. 2d 602, 607.

The trial court in this cause exercised its discretion and found the award excessive and ordered a remittitur, which the appellee spouse accepted. Appellant's rejection of the remittitur caused the overruling of appellant's motion for a new trial. The verdict stands and should be affirmed by this court.

The trial court's error was in articulating its findings, not in denying the motion for a new trial. A verdict may be excessive, and the basis for a new trial or remittitur, without a finding that it must necessarily have been the result of passion or prejudice.

Should the verdict be so overwhelmingly disproportionate as to shock reasonable sensibilities, a different conclusion might be justified. *Pearson, supra.*

The verdict in this cause is not so disproportionate as to allow a conclusion that it was predicated upon passion or prejudice and should be allowed to stand. I cannot find that the court below abused its discretion and, therefore, dissent from the majority's

holding on this issue raised by the second assignment of error.

In the belief that the majority is inappropriate in its expression of astonishment and its expressed inclinations concerning the jury's responses to interrogatories, I must concur in judgment only in its holding on the trial court's denial of appellant's motion for judgment n.o.v. In all other respects, I concur.