This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Deontrey Simmons has appealed from his conviction in the Summit County Court of Common Pleas for failure to comply with an order or signal of a police officer and obstructing official business. This Court affirms in part, reverses in part, and remands for further proceedings.
 I.
{¶ 2} In March 2002, Appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(2); one count of failure to comply with an order or signal of a police officer ("failure to comply"), in violation of R.C. 2921.331(A); and one count of obstructing official business, in violation of R.C. 2921.31(A). Appellant entered a plea of not guilty to the charges, and the matter was scheduled for trial. Prior to trial, Appellant filed a motion in limine seeking to prohibit the state from adducing any hearsay evidence of a witness' pretrial identification. During the trial, the court held a conference in chambers on the motion, following which the court denied Appellant's motion and allowed into evidence a police officer's testimony regarding the identification.
{¶ 3} The jury thereafter returned a verdict of not guilty on the felonious assault charge, but guilty of failure to comply and obstruction of official business. The court sentenced Appellant to concurrent terms of imprisonment of five years for failure to comply, and one year for obstruction of official business. Appellant has timely appealed from his convictions and sentence, asserting three assignments of error which we have rearranged to facilitate review.
 II. Assignment of Error Number Two
{¶ 4} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 5} In his second assignment of error, Appellant has argued that his convictions are contrary to the manifest weight of the evidence. Specifically, Appellant has challenged the jury's finding that Appellant was at the scene of the crime as against the weight of the evidence.
{¶ 6} In determining whether a conviction is against the manifest weight of the evidence, this Court must:
{¶ 7} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 9} Appellant was convicted of failure to comply in violation of R.C. 2921.331(A), which provides: "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." Appellant was also convicted of obstructing official business in violation of R.C. 2921.31(A), which provides:
{¶ 10} "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
{¶ 11} The evidence adduced at trial established that, while on routine patrol on February 21, 2002, Officers Keith Meadows and Scott Rubes of the Akron Police Department entered the license plate number of a Burgundy Ford Explorer into their cruiser's mobile data terminal. Information in the computer database indicated that the vehicle was registered to a Michelle Howard, and that an active warrant for the arrest of Michelle was outstanding.
{¶ 12} At approximately 8:12 p.m. that evening, the officers initiated a traffic stop of the Explorer. Officer Meadows approached the driver's side of the vehicle and escorted the driver out of the car. As Officer Rubes advanced toward the front door of the passenger side, he observed a black male in the passenger seat frantically looking back and forth as if to see how many officers were present or where they were in relation to the vehicle. Sensing that the passenger might attempt to flee or put up a struggle, Officer Rubes radioed a request for backup units.
{¶ 13} The officer then cautiously approached the passenger door, and saw the passenger positioning his arms and legs for a possible attempt to escape out the open driver's side door. Officer Rubes tried to open the passenger door, but it was locked. At that point, the passenger began to leap over the center console. The officer reached inside the partially open window and tried to stop the passenger but, after a struggle, the passenger successfully positioned himself in the driver's seat of the Explorer. With one arm still clinging to the officer, the former passenger shifted the vehicle into gear and accelerated forward. The officer, with his body caught in the window of the moving Explorer, struggled to pull the fleeing suspect off of the accelerator. According to Officer Rubes, he repeatedly ordered the suspect to "Stop. Get down on the ground." Finally, after the Explorer had dragged the officer twenty to thirty feet from where it was initially stopped, Officer Rubes managed to disengage himself from the suspect and fell onto the street, and the suspect sped away.
{¶ 14} Appellant has not disputed the events described above, but has argued instead that the jury acted against the manifest weight of the evidence in determining that he was the passenger who struggled with Officer Rubes in the Explorer. Appellant presented an alibi defense, and has maintained that he was at his girlfriend's residence watching a movie at the time of the officers' encounter with the occupants of Michelle's vehicle.
{¶ 15} Officer Rubes was the first witness at trial, and he testified that he got a "good look" at the passenger. The officer described the passenger as wearing a black silk "do-rag" on his head, and "a black leather jacket with a hood on it; facial hair, full facial hair, black male, early 20s, gold teeth[.]" Officer Rubes also testified that he identified Appellant as the assailant from a single photograph later presented to him at the police station, and he again identified Appellant from the witness stand in court. Officer Rubes testified that an open container of Hennessee Whiskey was recovered from the vehicle and tested for fingerprints, but officers were unable to trace any prints on the bottle to Appellant.
{¶ 16} The next witness to testify was Michelle Howard, the registered owner of the Explorer whose husband, Christopher Howard, was driving the vehicle when the officers initiated the traffic stop. Michelle testified that during the day of the events in question, her husband and a man she knew as "Deeter" picked her up from work in her red Ford Explorer and dropped her off at home. According to Michelle, her husband and "Deeter" then left in the Explorer, and she did not hear from either of them until "Deeter" telephoned her and told her that Christopher had been arrested for driving without a license.
{¶ 17} Michelle testified that she never met Appellant, and that she met the man she knew as "Deeter" on only two occasions. Michelle also stated that she "noticed a gold tooth or two" in "Deeter's" mouth. Michelle testified that she was unable to identify "Deeter" from a photo array presented to her by police on the night of February 21, 2002.
{¶ 18} Officer Meadows was the state's next witness at trial. Officer Meadows testified that a flier was retrieved from the Explorer which stated: "ANOTHA LEVEL RECORDS INVITES YOU TO A BIRTHDAY PARTY FOR DEDAMAN" on February 19. The officer further testified that on the night of the events in question, he entered "Deda" and "Deeter," the name provided by Ms. Howard as the person who had left in the Explorer with her husband, into their law enforcement information database. The officer stated that the database identified both "Deeter" and "Deda" as nicknames of Appellant, and provided a date of birth of February 19, 1976 — the same date as the birthday party for "Deda" announced by the flier recovered from the Explorer.
{¶ 19} Following the ruling on Appellant's motion in limine, the state re-called Officer Rubes to testify. According to Officer Rubes, a photo array which included a photograph of Appellant in position number five was shown to Christopher Howard at the police station on the night of the incidents in question. The officer stated that, upon being presented with the photo array, Christopher "immediately, without hesitation, held up five fingers." Officer Rubes further testified that "[w]e asked him if he was indicating Photo No. 5, at which point he nodded his head in a very sweeping, long motion indicating yes, affirmative, No. 5."
{¶ 20} Deputy Todd Hart, a booking officer at the Summit County Jail, also testified at trial. Deputy Hart testified that he booked Appellant into the jail on March 15, 2002, and his records from that event provided that Appellant's date of birth was February 19, 1976, that Appellant had gold teeth, and that Appellant had been known by the alias "Deeter."
{¶ 21} Following the admission into evidence of the photo array and the birthday flier, the state rested its case. Thereupon, Appellant called Akron Police Detective Amy Frame as a witness. Detective Frame testified that she compared a palm print taken from the bottle of Hennessee Whiskey recovered from the Explorer, and that it did not match a palm print taken from Appellant.
{¶ 22} The final witness to testify was Kelly Veal, who stated that she was Appellant's girlfriend. Ms. Veal testified that she recalled the day of February 21, 2002, because on that date she learned that she was pregnant with Appellant's child. Ms. Veal stated that Appellant picked her up from her job at approximately 6:10 p.m. that evening, and they both drove to a friend's house and got a movie. According to Ms. Veal, she and Appellant then went to her apartment and watched the movie until approximately 9:00 p.m. At 9:00 p.m., Ms. Veal testified, she drove Appellant to the home of a friend in Cuyahoga Falls to do homework and left him there, and returned to pick him up at approximately 10:30 or 11:00 p.m. Ms. Veal also testified that she was with Appellant on his birthday on February 19. According to Ms. Veal, there was no party for him, and she and Appellant spent his birthday riding in a limousine.
{¶ 23} Pursuant to the state's motion, at the conclusion of all the testimony the court required Appellant to open his mouth and show his teeth to the jury.
{¶ 24} Appellant has argued that his convictions based on the foregoing evidence were against the manifest weight of the evidence. Specifically, Appellant has cited 1) Michelle's failure to identify Appellant as the man she knew as "Deeter," either from a photo array on the night of the events in question or in court during Appellant's trial; 2) the failure to match his prints to those on the whiskey bottle recovered from the passenger side of the Explorer; and 3) Ms. Veal's testimony that Appellant was with her during the time of the officers' encounter with the Explorer. Appellant has also argued that Officer Rubes' initial identification of Appellant was based on a single photograph of Appellant rather than a photo array, that no evidence connected Appellant to the birthday flier other than his common birthday with "Dedaman," and that no evidence connected Appellant's gold teeth to the gold teeth described by Officer Rubes and Michelle.
{¶ 25} However, "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14, appeal not allowed (2000), 88 Ohio St.3d 1482. Officer Rubes testified that he got a good look at the passenger during the struggle, and he positively identified Appellant as the passenger from a photograph prior to trial and in court during the trial. Michelle testified that her husband left with a man she knew as "Deeter," and a flier recovered from the Explorer announced a birthday party for "Deda," on the same date as Appellant's birthday. A police information database indicated that Appellant had been known by the aliases "Deeter" and "Deda." Officer Rubes testified that the passenger he struggled with had gold teeth, and Michelle testified that the "Deeter" she had met on two occasions had gold teeth; Appellant also had gold teeth. With respect to Ms. Veal's alibi testimony, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 26} After thoroughly reviewing the record, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice in finding Appellant guilty of failure to comply and obstructing official business. Accordingly, Appellant's second assignment of error is without merit.
 Assignment of Error Number One
{¶ 27} "THE TRIAL COURT ERRED WHEN IT PERMITTED TESTIMONY FROM THE OFFICER CONCERNING AN IDENTIFICATION MADE BY CHRISTOPHER HOWARD WHO DID NOT TESTIFY AT TRIAL."
{¶ 28} In his first assignment of error, Appellant has argued that the trial court erred in admitting Officer Rubes' testimony describing Christopher Howard's out-of-court identification of Appellant. Appellant has contended that the admission of this testimony violated his federal and state constitutional rights to confront his accusers.
{¶ 29} Section 10, Article I of the Ohio Constitution provides: "In any trial, in any court, the party accused shall be allowed *** to meet the witnesses face to face[.]" In addition, the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him[.]" The Confrontation Clause of the Sixth Amendment has been made applicable to the states through the Fourteenth Amendment to the federal constitution. Pointer v. Texas (1965), 380 U.S. 400, 406,85 S.Ct. 1065, 13 L.Ed.2d 923. "`The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" State v. Madrigal
(2000), 87 Ohio St.3d 378, 384, certiorari denied (2000), 531 U.S. 838,121 S.Ct. 99, 148 L.Ed.2d 58, quoting Maryland v. Craig (1990),497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666.
{¶ 30} However, an accused may be denied the right to cross-examination without violating the Confrontation Clause where the court determines that the declarant's out-of-court statements are "`so trustworthy that adversarial testing can be expected to add little to [the statement's] reliability.'" (Alteration sic.) Madrigal,87 Ohio St.3d at 385, quoting White v. Illinois (1992), 502 U.S. 346, 357,112 S.Ct. 736, 116 L.Ed.2d 848. In other words, "the right to confrontation is not absolute and `does not necessarily prohibit the admission of hearsay statements against a criminal defendant.'" Madrigal,87 Ohio St.3d at 385, quoting Idaho v. Wright (1990), 497 U.S. 805, 813,110 S.Ct. 3139, 111 L.Ed.2d 638. "Hearsay statements are deemed sufficiently reliable to allow their admission into evidence without the benefit of cross-examination when the statements (1) fall within a firmly rooted hearsay exception, or (2) contain adequate indicia of reliability."Madrigal, 87 Ohio St.3d 378, paragraph one of the syllabus.
{¶ 31} The trial court determined, and the state has argued on appeal, that Officer Rubes' testimony describing Christopher's out-of-court identification of Appellant was admissible as a present sense impression pursuant to Evid.R. 803(1), and thus was not inadmissible under the hearsay rule. The state has further contended that the present sense impression exception is a "firmly rooted exception" to the hearsay rule, and therefore does not violate Appellant's constitutional rights to confront his accusers. Finally, the state has maintained that any error in the admission of Officer Rubes' testimony was harmless.
{¶ 32} Our resolution of Appellant's first assignment of error thus requires a multi-step inquiry. Before examining whether the admission of the identification violated Appellant's constitutional rights to confront his accusers, we must determine whether Christopher's out-of-court identification of Appellant falls within the present sense impression exception to the hearsay rule. In reviewing the trial court's rulings on admissibility of evidence, this Court will not overturn such rulings absent an abuse of discretion and a showing that Appellant has suffered material prejudice thereby. State v. Martin (1985),19 Ohio St.3d 122, 129, certiorari denied (1986), 474 U.S. 1073,106 S.Ct. 837, 88 L.Ed.2d 808. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
{¶ 33} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). For purposes of the foregoing definition of hearsay, a "statement" includes "nonverbal conduct of a person, if it is intended by him as an assertion." Evid.R. 801(A). In the case sub judice, Christopher's conduct in holding up five fingers and nodding affirmatively, as described by Officer Rubes, was non-verbal conduct intended as an assertion that he was identifying the picture of Appellant from the photo array. As the statement was offered to prove the truth of the matter asserted, i.e., that Appellant was the person with whom Christopher was driving in the Explorer, it was properly characterized by the trial court as hearsay.
{¶ 34} Evid.R. 802 provides that hearsay is generally inadmissible as evidence. Evid.R. 803, however, sets forth certain exceptions to the general rule excluding hearsay. In particular, Evid.R. 803(1) provides that the hearsay rule does not exclude present sense impressions, which are defined as "statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."
{¶ 35} In the case at bar, Christopher manifested his non-verbal assertion (i.e., his identification of Appellant) in response to being presented with a photo array by Officer Rubes. For purposes of Evid.R. 803(1), therefore, the "event or condition" that Christopher's statement was "describing or perceiving" was the photo array. Nevertheless, Christopher's report of this event or condition involved more than an account of a contemporaneously perceived sense impression, because his selection of Appellant's picture from the photo array constituted an identification of Appellant as the passenger who was with him in the Explorer over four hours earlier. As such, the passage of time between Christopher's identification from the photo array and the last occasion on which he was in the company of Appellant undermines the basis of trustworthiness inherent in the present sense impression exception — namely, "close temporal proximity to the event." Cox v. OliverMachinery Co. (1987), 41 Ohio App.3d 28, 35. In Cox, the court explained:
{¶ 36} "The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness. The key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived — a fact which obviously detracts from the statement's trustworthiness." Id. at 35-36.
{¶ 37} The circumstances of Christopher's identification of Appellant's photograph do not demonstrate an "insufficient period to reflect on the event perceived." The Explorer was stopped by police at approximately 8:12 p.m.; Officer Rubes testified that Christopher was presented with the photo array between midnight and 1:00 a.m. Indeed, the nature of the hearsay "statement" in this case — Christopher's identification of Appellant as his companion in the Explorer earlier in the evening — manifestly is the product of reflective thinking rather than spontaneous perception.
{¶ 38} Moreover, Officer Rubes testified that Christopher was in police custody at the time he made the identification, having been arrested on an outstanding warrant and for driving without a license. After Christopher cooperated with police and made the identification of Appellant, he was released with a summons. These conditions suggest a potential motive by Christopher, who was summoned by the state to testify at trial but removed himself from the court's jurisdiction, to give police information helpful in their investigation of Appellant in exchange for a break in their case against him. Appellant was entitled to explore this possible source of bias through cross-examination.
{¶ 39} "Unlike the Federal Rules of Evidence, Evid.R. 803(1) gives the trial court discretion to exclude statements if the circumstances under which the statement was made indicate a lack of trustworthiness."State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at 13, citing Evid.R. 803(1) Staff Note. As the circumstances of Christopher's identification of Appellant clearly "indicate a lack of trustworthiness," we must conclude that the trial court abused its discretion in admitting Officer Rubes' testimony describing Christopher's identification as a present sense impression.
{¶ 40} As Christopher's identification of Appellant was not admissible pursuant to the present sense impression exception to the hearsay rule, it follows that the trial court's determination that the identification falls "within a firmly rooted hearsay exception" was also in error. Madrigal, 87 Ohio St.3d 378, paragraph one of the syllabus. In light of our foregoing discussion of the statement's lack of trustworthiness, it is equally clear that the identification does not "contain adequate indicia of reliability." Id. Consequently, the admission of the identification violated Appellant's Confrontation Clause rights, and our "final inquiry is whether the Sixth Amendment error was `harmless beyond a reasonable doubt.'" Id. at 388.
{¶ 41} "This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction." Id., citing Chapman v. California (1967), 386 U.S. 18, 23,87 S.Ct. 824, 17 L.Ed.2d 705; see, also, State v. Lytle (1976),48 Ohio St.2d 391, 403, vacated on other grounds (1978), 438 U.S. 910,98 S.Ct. 3135, 57 L.Ed.2d 1154. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, 290, certiorari denied (1983), 464 U.S. 1020, 104 S.Ct. 554, 78 L.Ed.2d 727. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992), 65 Ohio St.3d 483,485.
{¶ 42} In the case sub judice, there was an abundance of admissible evidence identifying Appellant as the passenger in the Explorer. Officer Rubes testified that he got a good look at the passenger, and offered a detailed description at trial. The officer testified that he identified Appellant from a single photograph presented to him later that night, and also identified Appellant in court from the witness stand. Officer Meadows testified that a police information database identified "Deeter" and "Deda" as aliases used in the past by Appellant. Michelle testified that a man she knew as "Deeter" left with her husband in her red Explorer on the night in question, and a flier later recovered from the Explorer announced a birthday party for "Dedaman" on the same day as Appellant's birth date. Officer Rubes described the passenger he struggled with as having gold teeth, and Michelle testified that the man she knew as "Deeter" had gold teeth; Appellant also had gold teeth, and exhibited them to the jury.
{¶ 43} In light of this overwhelming evidence identifying Appellant as the passenger in the Explorer, we find that there was no reasonable possibility that Officer Rubes' testimony describing Christopher's identification of Appellant contributed to Appellant's convictions. Appellant's first assignment of error is without merit.
 Assignment of Error Number Three
{¶ 44} "THE COURT FAILED TO FOLLOW SENTENCING GUIDELINES AND ERRED IN IMPOSING IT'S [SIC] SENTENCE."
{¶ 45} In his third assignment of error, Appellant has argued that the trial court erred in sentencing Appellant. Specifically, Appellant has argued that the court failed to follow applicable sentencing guidelines in imposing the maximum sentence for the third degree felony of failure to comply, or five years imprisonment. The state has averred that the maximum degree of the failure to comply violation of which Appellant was convicted was a first degree misdemeanor, and has conceded that the matter should therefore be remanded for resentencing.
{¶ 46} An appellate court may remand a matter on appeal for resentencing if it clearly and convincingly finds that the court's findings are unsupported by the record or that the sentence imposed by the trial court is otherwise contrary to law. R.C. 2953.08(G)(2). Clear and convincing evidence is evidence "`which will produce *** a firm belief or conviction as to the allegations sought to be established."State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
{¶ 47} In the instant case, Appellant was indicted under R.C.2921.331(A). A violation of R.C. 2921.331(A) is a misdemeanor of the first degree. R.C. 2921.331(C)(2). R.C. 2929.21(B)(1) provides that the maximum term of imprisonment for a misdemeanor of the first degree is six months.
{¶ 48} While various provisions of R.C. 2921.331 provide for enhancements to a higher degree offense for violations of division (B) of that statute, no such enhancement provisions apply to violations of division (A) of R.C. 2921.331. Nevertheless, the indictment against Appellant included enhancement language that would elevate a violation of R.C. 2921.331(B) to a felony of the third degree, and the jury was instructed on the enhancement language. The jury returned a verdict of guilty on the charged violation of R.C. 2921.331(A), and found Appellant guilty of the indicted enhancement provisions in a special interrogatory accompanying its verdict form. The trial court then sentenced Appellant to a five-year term of imprisonment, the maximum penalty for a third degree felony.
{¶ 49} As the trial court sentenced Appellant to a term of imprisonment in excess of the maximum term of imprisonment for a violation of R.C. 2921.331(A), we find by clear and convincing evidence that Appellant's sentence is contrary to law. To that extent, Appellant's third assignment of error is well taken.
 III.
{¶ 50} Appellant's first and second assignments of error are overruled; to the extent that the trial court acted contrary to law in sentencing Appellant to a term of imprisonment in excess of the maximum sentence for a violation of R.C. 2921.331(A), his third assignment of error is sustained. The judgment of the trial court is affirmed in part, the sentence imposed on Appellant for his conviction for violating R.C.2921.331(A) is vacated, and the matter is remanded to the trial court for resentencing.
BAIRD, P.J. and BATCHELDER, J. CONCUR.