[Cite as *Cleveland v. O'Malley*, 2011-Ohio-2251.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 94071**

---

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## PATRICK O'MALLEY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2008CRB039867

**BEFORE:** Cooney, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 12, 2011
**ATTORNEY FOR APPELLANT**

John T. Castele
1310 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Robert J. Triozzi
Director of Law
City of Cleveland

By: Victor R. Perez
Chief City Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113



COLLEEN CONWAY COONEY, J.:

**{¶ 1}** Defendant-appellant, Patrick O'Malley ("O'Malley"), appeals his assault conviction. Finding no merit to the appeal, we affirm.

**{¶ 2}** In December 2008, O'Malley was charged with assault, a violation of Cleveland Codified Ordinances ("CCO") 621.03, a first degree misdemeanor. O'Malley's codefendant, Richard Vega ("Vega"), was also charged with assault. The two cases were consolidated for a jury trial at which the following evidence was adduced:

{¶ 3}   On July 21, 2008, Raymond Hulec ("Hulec") engaged in an argument with two employees at a gas station near his home.   He was subsequently arrested for impersonating a police officer.   Hulec was taken to the Cleveland city jail where he claimed two corrections officers — O'Malley and Vega — assaulted him.

{¶ 4}   Hulec testified regarding seven separate incidents of assault, including being slapped, pushed, punched, kicked, kneed, and verbally abused by O'Malley and Vega.   Hulec told the jail's nurse, Jill Loretitsch ("Loretitsch"), about the abuse during one of his visits to receive medications.   Her records indicate that she made note of Hulec's being hit in the face with a newspaper by Vega.   This incident was the only incident of assault captured on the jail's surveillance camera and was admitted into evidence at trial.

{¶ 5}   Although Hulec claimed that most of the abuse occurred in front of other inmates, none of the inmates in custody at the time of Hulec's stay in jail were available to testify at trial.   Neither O'Malley nor Vega testified at trial.   Tony Sanchez, a maintenance worker, and Officer Dave Stonko, another corrections officer, testified that they did not witness any abuse to Hulec by O'Malley or Vega.   Other officers at the jail during Hulec's stay provided reports to the investigating detective in which they denied any knowledge of incidents involving Hulec on the day in question.

{¶ 6}   Photos of Hulec's injuries and his medical records were admitted into evidence, as well as his written statements regarding the incidents.

{¶ 7} O'Malley was found guilty and sentenced to a $1,000 fine and 180 days in jail, with $500 of the fine and 170 days of jail time suspended. Vega was also found guilty and received the same sentence.

{¶ 8} O'Malley now appeals, raising three assignments of error.

Manifest Weight of the Evidence

{¶ 9} In his first assignment of error, O'Malley argues his conviction is against the manifest weight of the evidence. We disagree.

{¶ 10} A challenge to the manifest weight of the evidence attacks the verdict in light of the State's burden of proof beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new proceeding ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 11} The Ohio Supreme Court has explained that when reviewing challenges to the manifest weight of the evidence, a court of appeals must be guided by the presumption that the

findings of the trier of fact were indeed correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273. The underlying rationale for giving deference to the trial court's findings "rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. A reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 12} In the instant case, O'Malley was convicted of assault under CCO 621.03, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another."

{¶ 13} O'Malley argues that the jury clearly lost its way due to the lack of corroborating evidence to support Hulec's claims. O'Malley points to the testimony and statements that support his claim that no assault occurred.

{¶ 14} In addition to the lack of corroborating evidence, O'Malley argues that Hulec was not a credible witness in light of his conflicting testimony and written statements. In one of Hulec's statements, he claimed that he had been assaulted by the gas station attendants and "roughed up" by the arresting police officers. During his trial testimony, Hulec denied being assaulted by the attendants or by the arresting officers, and alleged that he was only assaulted by O'Malley and Vega inside the jail.

**{¶ 15}** Although Hulec arguably may lack credibility in that one of his prior written statements conflicted with his testimony at trial, the jury as the trier of fact weighed all the evidence and reasonable inferences and found him to be a credible witness. When assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. Moreover, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. *Hill v. Briggs* (1996), 111 Ohio App.3d 405, 412, 676 N.E.2d 547. The court below is in a much better position than an appellate court "to view the witnesses, to observe their demeanor, gestures and voice inflections, and to weigh their credibility." *Briggs*, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

**{¶ 16}** The surveillance video from the gas station clearly shows that Hulec was not assaulted by the gas station attendants. The photo taken of Hulec by the Central Processing Unit prior to his release from jail clearly shows visible injuries to his face. The record of his arrival at the jail indicates that he entered with no visible injuries. The record of his first visit to the nurse also does not indicate that she observed any visible injuries. However, the record of his second visit to the nurse contains a note that she noticed ecchymotic of his eyes, meaning bruising consistent with a "black eye," and a bruised upper right arm.

{¶ 17} This evidence supports the jury's conclusion that Hulec sustained injuries to his face some time during his incarceration at the City jail. The jury clearly found Hulec's testimony regarding the ways in which he sustained these injuries to be credible. Based on the evidence before the jury, we cannot say that the conviction is against the manifest weight of the evidence. Nor can we say that the jury lost its way and created a manifest injustice in convicting O'Malley.

{¶ 18} Accordingly, the first assignment of error is overruled.

Hearsay

{¶ 19} In his second assignment of error, O'Malley argues that the trial court erred when it excluded permissible hearsay evidence. We disagree.

{¶ 20} A trial court possesses broad discretion with respect to the admission of evidence, including the discretion to determine whether evidence constitutes hearsay, and whether it is admissible hearsay. *State v. Graves*, Lorain App. No. 08CA009397, 2009-Ohio-1133, ¶4. We review a trial court's decision regarding admissibility of evidence under an abuse of discretion standard. *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, certiorari denied, 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable, rather than a mere error in judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.2d 217, 215 N.E.2d 384.

{¶ 21} At trial, the prosecutor asked the jail nurse, Loretitsch, if she remembered anything else about Hulec since she spoke to the detective investigating the incident. She stated "yes" and attempted to answer but was quickly cut off.

{¶ 22} O'Malley contends that had she been allowed to continue she would have testified that one of the prisoners she treated after Hulec told her that Hulec told him that he "had a plan," and was making up the alleged assaults in order to frame the corrections officers.

{¶ 23} When the City concluded its direct examination of Loretitsch, it requested that the court grant a motion in limine to prevent defense counsel from questioning Loretitsch regarding the statement Hulec allegedly made to another inmate that was then repeated to Loretitsch. The City argued that it constituted inadmissible hearsay within hearsay. Defense counsel requested that the trial court deny the motion, arguing that when the prosecutor asked Loretitsch whether she remembered anything else he opened the door for the defense to cross-examine her regarding this statement.

{¶ 24} The trial court granted the motion and instructed defense counsel to call the other inmate to testify about what Hulec told him, and then Loretitsch could be cross-examined regarding what the other inmate told her. Defense counsel failed to produce this other inmate prior to the conclusion of the trial, and therefore, Loretitsch was not re-examined and no evidence of this alleged statement was admitted.

{¶ 25} O'Malley concedes that the statement Loretitsch would have testified to would have been hearsay within hearsay. However, O'Malley argues that Loretitsch's testimony should have been allowed because it falls within two hearsay exceptions. Evid.R. 805 states that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

{¶ 26} O'Malley argues that Hulec's initial statement "I have a plan" is an exception to the hearsay rule because it falls under Evid.R. 803(3). The "then existing, mental, emotional, or physical condition" exception allows for the admission of:

{¶ 27} "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

{¶ 28} The City concedes this point, and we agree that Hulec's statement constitutes an exception to the hearsay rule under Evid.R. 803(3) as a statement of Hulec's then existing state of mind.

{¶ 29} We proceed then to the next step of the analysis, whether the inmate's statement to Loretitsch constitutes an exception to the hearsay rule. O'Malley argues that the inmate's

statement to Loretitsch, repeating Hulec's statement, is an exception to the hearsay rule because it constitutes a "present sense impression" under Evid.R. 803(1). The "present sense impression" exception allows for the admission of:

{¶ 30} "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."

{¶ 31} The rationale for allowing such statements is based on the lack of time available for reflection, and immediacy is strictly required. *Neal v. Johnson*, Cuyahoga App. No. 83124, 2004-Ohio-743; *United States v. Lentz* (E.D.Va.2002), 282 F.Supp.2d 399, 410.

{¶ 32} "The key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived-a fact [sic] which obviously detracts from the statement's trustworthiness." *Cox v. Oliver Mach. Co.* (1987), 41 Ohio App.3d 28, 35, 534 N.E.2d 855.

{¶ 33} Here, it is apparent from the record that the inmate did not make the statement to Loretitsch "while the declarant was perceiving the event or condition, or immediately thereafter." The inmate arrived in the nurse's office some time after he heard the alleged admission. The record contains no evidence showing how much time elapsed between when

Hulec said "I have a plan" and when the inmate relayed this to Loretitsch. Clearly, it was not said to Loretitsch while the inmate heard Hulec say it, nor immediately thereafter. The indefinite lapse of time between when the inmate heard the statement and when he relayed the statement to Loretitsch indicates a level of untrustworthiness that prevents this statement from conforming to Evid.R. 803(1). Therefore, the inmate's statement to Loretitsch does not constitute an exception to the hearsay rule.

{¶ 34} Thus, the trial court did not abuse its discretion by excluding this inadmissible hearsay evidence. Accordingly, the second assignment of error is overruled.

Ineffective Assistance of Counsel

{¶ 35} In his third assignment of error, O'Malley contends that he received ineffective assistance of counsel.

{¶ 36} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 37} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial

would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; *Strickland* at 686. In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus.

{¶ 38} This court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland* at 689. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001-Ohio-26, 744 N.E.2d 163.

{¶ 39} O'Malley argues that he received ineffective assistance of counsel because 1) defense counsel failed to cross-examine Loretitsch regarding Hulec's alleged "I have a plan" statement, and 2) defense counsel failed to request a mistrial when jurors notified the court of spectators staring at them during the trial.

{¶ 40} Having found that the trial court properly excluded the "I have a plan" testimony, we cannot find that defense counsel erred in failing to cross-examine Loretitsch on that subject. Counsel was simply complying with the trial court's instruction not to

cross-examine her until after the inmate who heard the statement testified. Defense counsel cannot be found to be ineffective for complying with a court order.

{¶ 41} O'Malley's second claim of ineffective assistance of counsel pertains to defense counsel's alleged failure to request a mistrial after it was discovered that two men had been staring at the jurors during the trial.

{¶ 42} Prior to the last day of testimony, it was brought to the trial court's attention that some of the jurors observed two men staring at them during the trial. It was unclear whether the jurors felt that they had been harassed or intimidated by these two men. In response to this information, the trial court conducted an in camera interview of each juror separately.

{¶ 43} The record shows that the trial court thoroughly examined each juror in great detail about the alleged intimidation and the potential effect it had on them. Both defense counsel and the prosecutor participated in questioning the jurors as well. The jurors were asked whether the incident had altered their ability to be fair and impartial toward the defendant. Each juror responded that they were confident that they could continue to act in a fair and impartial manner. A juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court. *State v. Phillips* (1995), 74 Ohio St.3d 72, 89, 656 N.E.2d 643. At the conclusion of all of the interviews, the court, the prosecutor, and

defense counsel were confident that the intimidation had not risen to a level of misconduct and that all of the jurors could continue.

{¶ 44} Although defense counsel failed to object to the court's decision to proceed with the trial, we find no plain error in the court's resuming the trial. "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error exists when it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225; *State v. Watson* (1991), 61 Ohio St.3d 1, 572 N.E.2d 97; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894. We invoke the plain error rule only if we find that the circumstances in the instant case are exceptional, and that reversal of the judgment is necessary to prevent a manifest miscarriage of justice. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.

{¶ 45} A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490. The granting of a mistrial is only necessary when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118,

127, 580 N.E.2d 1, *Illinois v. Somerville* (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.

{¶ 46} The record clearly reflects that the court concluded that the alleged intimidation did not adversely affect the substantial rights of the accused and therefore, a fair trial was still possible. Thus, we do not find that defense counsel was ineffective for failing to request a mistrial in response to this incident.

{¶ 47} Accordingly, we find that O'Malley has not established ineffective assistance of counsel. The record does not indicate that defense counsel failed in his essential duties or that his performance fell below an objective standard of reasonableness.

{¶ 48} Accordingly, the third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____

COLLEEN CONWAY COONEY, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR