[Cite as *State v. Thomas*, 2018-Ohio-2841.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106194

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

**MAISHA L. THOMAS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-613189-A

**BEFORE:** S. Gallagher, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 19, 2018

[Cite as *State v. Thomas*, 2018-Ohio-2841.]
**ATTORNEY FOR APPELLANT**

J. Charles Ruiz-Bueno
36130 Ridge Road
Willoughby, Ohio   44094


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Hannah Smith
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, P.J.:

{¶1} Appellant Maisha L. Thomas appeals her conviction for assault. Upon review, we affirm.

{¶2} On January 24, 2017, appellant was charged with one count of assault in violation of R.C. 2903.13(A) with a furthermore clause that alleged "the offense was committed by defendant, a caretaker, against the victim, a functionally impaired person under the care of Maisha L. Thomas." Appellant entered a plea of not guilty, and the case proceeded to a jury trial.

{¶3} The following facts were adduced at trial. The alleged assault occurred on November 20, 2016. On that date, appellant was employed by Our Lady of the Wayside as a caretaker at a group home for the developmentally disabled. She and another caretaker, Yasmeen Green, were working the same shift. The victim was under their care.

{¶4} The victim is an adult male who suffers from physical and mental impairments. Specifically, he has cerebral palsy, has difficulty moving the left side of his body, and uses a wheelchair. He also suffers dementia and has mental impairments. He can become easily agitated; he can get very belligerent and demanding; and he can become "mouthy," curse and yell, and use name-calling and slurs. He has been known to sometimes flail his arms or smack himself on the side of his head and face.

{¶5} Green testified that on the date of the incident, she and appellant were the only two working during the shift. She testified they were getting the Hoyer lift in place to move the

victim out of bed and were prepping the victim for a shower. She stated that it is protocol to have two caretakers when utilizing the Hoyer lift.[1]

{¶6} Green testified that the victim was "going into behavior," which she indicated means cursing, yelling, and being agitated. Green testified that appellant was "very much annoyed and agitated with [the victim]" and was telling the victim to "be quiet" and to "shut up." Green further testified that appellant "got pretty upset and she smacked [the victim]" on his face, near his mouth, and she said "Shut the f*** up. I'm not dealing with your sh** today." Green stated she observed appellant smack the victim three times, once while he was in the bed and two more times after they got him on the commode. She stated "the inside of his lip was busted" and there was blood. Green testified the victim was not hitting himself or flailing around. She stated she told appellant to go and Green took the victim to the shower. Green described the victim's demeanor as upset, sad, and crying. She testified that "he said he couldn't understand why she would hit him." Following the incident, Green called Tahara English, a coworker, and told her what happened.

{¶7} Tahara English testified that on the date of the incident, she received a phone call from appellant who stated "I just had to beat [the victim's] ass" and that he had been "mouthing off." English also testified to receiving a call from Green about the incident. At a staff meeting the next day, English notified Candice Abrams, who is a supervisor, of the incident. English observed that the victim's "lip was busted." She did not notice any scratches.

{¶8} Candice Abrams testified that after being notified of the incident, she called her supervisor. She then went to see the victim and observed an abrasion on the victim's inner lip.

---

[1] "A Hoyer lift is a machine used to help disabled people get out of bed when they can't get out themselves or they're too heavy to lift[.]" (Tr. 127.)

She did not observe any scratches or marks to the exterior of his face. Abrams testified that appellant and Green did not always get along, but she believed they had worked it out. She confirmed that two people are required to use the Hoyer lift, but that there have been times when one person starts the process. She also testified that "[the victim] is a two-person lift." She further testified that the victim was not able to remember everything that happened at first, but that he later was able to recall and that he remembered that he had been hit by appellant.

{¶9} Michelle Gray conducted an internal investigation of the matter and determined the claim was substantiated. An incident report was prepared, and the police were notified of the incident. The trial court sustained an objection when Gray was asked if the victim remembered what happened and responded, "Yes. He said he was hit. He did not remember by whom."

{¶10} Detective Dennis Bort investigated the incident. He took statements from the individuals involved and spoke to the victim. During direct examination, Detective Bort testified that he met with the victim and "[the victim] said he was assaulted. He mention[ed] nothing about kicking or pulling her hair."

{¶11} Detective Bort further testified that appellant's account of the incident was not consistent with Green's account. He testified that appellant denied striking the victim; that she stated the victim had been flailing his arms and she was trying to prevent him from hitting himself and to prevent herself from being hit; and that she stated the victim had pulled her hair and kicked her in the midsection. There was some question as to whether the victim would be able to kick that high. The detective testified that appellant stated she called English, but appellant maintained that she informed English she had been frustrated and had "wanted to

whoop [the victim's] ass." After conducting his investigation, taking statements, and preparing a report, Detective Bort determined there was enough evidence to charge appellant.

{¶12} Officer Richard Butler testified that he had received a report of an assault and had responded to the location to begin an investigation. Officer Butler observed an injury to the inside of the victim's lower lip. He described the injury as consistent with being smacked across the face. He did not observe any redness or scratch marks on the victim's face.

{¶13} During direct examination, the trial court sustained an objection and struck testimony from Officer Butler stating that "[the victim] explained he was hit in the face."

{¶14} During cross-examination, Officer Butler testified that "it was apparent that * * * it was tough to keep [the victim] on task, so I figured that his impairments were going to make it challenging to get a clear, you know, description of what happened."

{¶15} On recross-examination, the following questions were asked by defense counsel, and answers were provided by Officer Butler:

Q. And isn't it true that Candice Abrams indicated to you that [the victim] would agree that any of the staff hit him if he were asked?

A. That was said to me, not [another officer].

Q. I know. That's why I'm recalling you.

A. You're correct on that, yes.

Q. And that she didn't believe that he was necessarily reliable?

A. Correct.

Q. Okay.

{¶16} On redirect examination, the trial court overruled an objection to the following question and answer:

Q. [The victim] did say that Ma'Isha Thomas did hit him, correct?

A. Correct.

{¶17} Appellant testified that on the date of the incident, she and Green were the only two working at the time of the incident. She stated she was uncomfortable working with Green and that the two had several arguments on shift. Appellant testified she went into the victim's room alone and began strapping him for the Hoyer lift. She stated that the victim had been swinging his arms and yelling and cursing. Appellant testified that when she bent down, the victim grabbed her ponytail. She stated she was able to get him to release his fingers and push his arm back down. She testified that he was yelling, which was not unusual, as she continued to strap him on the Hoyer lift and that he kicked her. She denied striking the victim in any way. She stated she did grab his wrist while he was smacking himself. She testified that she first saw Green at the doorway when the victim had kicked her. She denied Green ever asking her to leave the room. She said she called English and told her she "wanted to whoop [the victim's] ass" because she was venting and upset with him for kicking her.

{¶18} Another employee, who had worked in the group home with appellant and is her friend, testified that it was not unusual for a single staff member to operate and place the victim into the Hoyer lift. She also testified that there were times when the victim would kick and scream when being attended, and that sometimes he "may swing on you."

{¶19} Cynthia DeRose, a nurse who did not perform the assessment of the victim, testified that she looked at the photographs and thought the injury may have been a canker sore. Photographs were introduced depicting the injury to the victim's inner lip.

{¶20} The jury found appellant guilty of assault as charged in the indictment, a felony of the fourth degree. The trial court sentenced appellant to 30 months of community control, with a one-year suspended prison sentence, and sentenced her to 90 days house arrest subject to electronic monitoring.

{¶21} Appellant timely filed this appeal. Under her sole assignment of error, appellant claims as follows: "The trial court committed prejudicial error by allowing hearsay testimony of the non-testifying victim through the state's witnesses."

{¶22} Appellant states that "[t]he crux of [her] appeal is centered upon the allowance of the testimony of Detective Dennis Bort and Officer Richard Butler, who provided hearsay testimony of the victim identifying [appellant] as the assaulter." Specifically, she points to the testimony of Detective Bort, who stated, without objection, that "[The victim] said that he was assaulted. He mention[ed] nothing about kicking or pulling her hair." She also points to the testimony of Officer Butler, who responded "correct" to the question "[The victim] did say that Ma'Isha Thomas did hit him, correct?" An objection was raised and overruled as to this testimony from Officer Butler.

{¶23} The record reflects that while the trial court sustained certain objections to testimony relaying what the nontestifying victim had stated to others about the assault, the trial court overruled the objection raised during Officer Butler's testimony. Appellant claims this testimony constituted inadmissible hearsay under Evid.R. 802, and was not subject to any exceptions.

{¶24} The record also reflects several instances where objections were not raised to testimony that was elicited concerning the victim's statements, including during the testimony of

Detective Bort. Appellant maintains that it was plain error to allow the testimony of Detective Bort, made without objection, because it affected her substantial rights since the testimony violated appellant's right to confront the witnesses against her under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause "prohibits the admission of 'testimonial statements' of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination." *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, Slip Opinion No. 2017-Ohio-8988, ¶ 46, citing *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶25} Appellant points to *State v. Iverson*, 8th Dist. Cuyahoga No. 85593, 2005-Ohio-6098, wherein a defendant's conviction for carrying a concealed weapon was vacated. This court found the Sixth Amendment's Confrontation Clause was violated when the state elicited testimonial hearsay from a police officer, who lacked personal knowledge, about the findings regarding the location and concealment of a weapon that were made by a second police officer who was not present at trial. *Id*. at ¶ 15. Also, additional hearsay testimony was introduced relevant to the operability of the weapon. *Id*. This court found that although trial counsel did not always object to the hearsay testimony, it was plain error to admit the evidence since but for the evidence, there was no independent evidence offered regarding the weapon's concealment or its operability. *Id*. at ¶ 18. Unlike *Iverson*, in this case there was other testimony offered regarding the assault.

{¶26} Nevertheless, appellant claims that the cumulative effect of the hearsay statements of the victim who was not present at trial affected the outcome of the jury verdict. She argues

that the jury was allowed to believe that the victim, himself, had corroborated Green's testimony, without appellant's right of confrontation. We are not persuaded by her argument.

{¶27} Initially, we find that the challenged testimony of Officer Butler and Detective Bort was hearsay. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 generally deems hearsay inadmissible unless the evidence falls under a specific exception to the hearsay prohibition. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87.

{¶28} The state contends that the subject testimony was admissible pursuant to Evid.R. 804. Evid.R. 804(B) sets forth hearsay exceptions when the declarant is unavailable as a witness. "Unavailability as a witness" is defined to include a situation in which the declarant "is unable to be present to testify at the hearing because of * * * then-existing physical or mental illness or infirmity." Evid.R. 804(A)(4). Assuming arguendo that the victim can be considered unavailable as a witness as argued by the state, it still must be shown that one of the hearsay exceptions set forth under the Evid.R. 804(B) is applicable herein. The state cites to no exception.

{¶29} Relevant hereto, Evid.R. 804(B)(5) pertains to statements by an incompetent person and only applies when all of the specified conditions are met, which is not the case herein. The rule provides the following:

(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

(5) Statement by a deceased or incompetent person.   The statement was made by a decedent or a mentally incompetent person, where all of the following apply:

(a)   the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;

(b)   the statement was made before the death or the development of the incompetency;

(c)   the statement is offered to rebut testimony by an adverse party on a matter

within the knowledge of the decedent or incompetent person.

Evid.R. 804(B)(5).

{¶30} The state also argues that the testimony falls under Evid.R. 803(3), which provides an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition."   However, the testimony of Detective Bort and Officer Butler concerning the victim's statements about the incident did not relate to the victim's then existing state of mind.   The state of mind exception under Evid.R. 803(3) "does not include statements of belief of past events by declarant.   To include statements of belief about a past event would negate the entire proscription against hearsay evidence."   1980 Staff Notes, Evid.R. 803(3).

{¶31} Not only was the challenged testimony of Detective Bort and Officer Butler hearsay, but also, because it was testimonial hearsay, it implicates the Confrontation Clause. Even so, "Confrontation Clause claims are subject to harmless-error analysis."   *State v. Beasley*, Slip Opinion No. 2018-Ohio-493, ¶ 178, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 192.

{¶32} Constitutional error is harmless if it is determined to be harmless beyond a reasonable doubt.   *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78,

citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id*., citing *Chapman* at 23. Upon a review of the record, we find any error in allowing this testimony was harmless beyond a reasonable doubt.

{¶33} Green testified that right after the assault, she gave the victim his shower. She described the victim's demeanor as being upset, sad, and crying. She testified that the victim stated he could not understand why appellant would hit him. No objection was raised, and this testimony arguably was admissible under the excited-utterance exception to the hearsay rule, Evid.R. 803(2). Further, the jury heard testimony that the victim was mentally impaired; that statements of the victim were not necessarily reliable; that he was not always able to remember; and that if he were asked, the victim would agree that any of the staff hit him.

{¶34} The record also reflects that the jurors heard other evidence of the assault. The testimony at trial included testimony from an eyewitness, Green, who testified she witnessed appellant assault the victim. Green provided a detailed description of the assault, indicating appellant slapped the victim three times. Another witness, English, testified that Green called her and informed her of the assault, and that appellant called her and admitted to the assault. Photographs of the victim depicted an injury to his inner lip that was consistent with being slapped across the face.

{¶35} The jurors heard that the assault was deemed substantiated by an internal investigation and that the police found there was enough evidence to charge appellant. Although

appellant denied striking the victim and provided a different version of the incident, the jurors were able to assess the witnesses' credibility and were free to accept the testimony offered by the state's witnesses. *See State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 197.

{¶36} Because there is no reasonable possibility that the improperly admitted evidence contributed to the conviction, the trial court's allowance of the hearsay testimony and the alleged Confrontation Clause violation was harmless beyond a reasonable doubt. We also are unable to find the cumulative effect of any errors deprived appellant of a fair trial. Appellant's sole assignment of error is overruled.

{¶37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR

[Cite as *State v. Thomas*, 2018-Ohio-2841.]