[Cite as *State v. Bell*, 2022-Ohio-823.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                          :

                                    No. 110693

    v.                                           :

RUEBEN T. BELL,                                  :

    Defendant-Appellant.                         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 17, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653154-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Harrison, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant Rueben Bell ("Bell") appeals from his conviction and sentence for felonious assault. Bell waived his constitutional right to a jury trial and submitted the matter directly to a bench trial on one count of felonious assault.

After a thorough review of the record, we find that his conviction is supported by competent and credible evidence, is not against the manifest weight of the evidence, and the trial court did not err in considering witness testimony; therefore, his conviction is affirmed. Additionally, we find that Bell's sentence, imposed pursuant to the Reagan Tokes Law (S.B. 201), is appropriate and constitutional.

**Procedural History and Facts**

{¶ 2} In 2020, Bell was indicted on one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2). The matter proceeded to a bench trial, at which the following pertinent evidence was presented.

{¶ 3} On August 15, 2020, John Mitchell and Latoya Johnson were staying at the Extended Stay Hotel and Suites in North Olmsted. The couple had been staying in various hotels in different municipalities throughout the Cleveland area trying to hide from Johnson's estranged husband, Bell. On this day, Mitchell was loading items into the trunk of Johnson's car in a parking lot adjacent to the hotel when he was struck from behind by a car. The force of the impact caused him to drop the groceries he was holding and dented the bumper of Johnson's car. He looked over his shoulder and saw that Bell was driving the car that had just hit him. Bell backed up to drive away and Mitchell chased after him on foot. Mitchell threw a rock towards the departing car. He sustained minor injuries.

{¶ 4} Mitchell testified he was certain it was Bell who hit him. Mitchell had known Bell for 15 years, both in and out of prison, and testified he knew Bell because

Bell used to sell him drugs. Mitchell admitted to having a criminal record and dealing and using drugs.

{¶ 5} North Olmsted Police Officer James Kaminski[1] responded to the scene. He testified that Johnson, who was acting nervous and scared, told Officer Kaminski that "Rueben Bell, her husband, had struck John [Mitchell] with a car that appeared to be a rental car." Later, Kaminski learned that "another officer [received] a voicemail from him [Bell]" and that Bell "called the North Olmsted Police about being upset with the rock being thrown at his vehicle." Upon learning this information, Officer Kaminski called Bell and left him a message to come in and file a police report about the rock incident, but Bell never returned his calls or came to the station.

{¶ 6} Bystander Tyrone West ("West"), who did not know any of the involved parties, was in the parking lot on the day in question when he heard a "loud smack," looked up, and saw a car backing up; he did not see the actual impact. West estimated he was five feet from the vehicles in question, and that he, and the male and female nearby, could see the face of the driver. West described the scene as "chaos." West testified he only had to walk a few steps to see the license plate, which he memorized and relayed to police. Johnson, who did not testify at trial, told West it was her "ex-husband or her husband" who hit Mitchell. West testified that

---

[1] Officer Kaminski testified he is a seven and one-half year veteran of the North Olmsted Police Department. He is certified by the Ohio Peace Officers Training Academy and testified that he continually undergoes updated training through the academy and the Ohio Attorney General's Office.

Mitchell and Johnson were upset, and Mitchell was yelling "this ain't the first time he's done this, you know, I'm sick of this. We need to call the police." West testified that Johnson was "kind of just shocked I guess, in awe of it or shocked * * *."

{¶ 7} Following all testimony, the trial court convicted Bell of the sole count in the indictment and sentenced him to two to three years in prison pursuant to the Reagan Tokes Law.

**Assignments of Error**

{¶ 8} Bell filed a notice of appeal and raises the following three assignments of error for our review:

> I. The bench trial verdict was against the manifest weight of the evidence.
>
> II. The trial court erred in considering improper hearsay testimony made by a biased declarant outside of the required temporal period as well as admitting hearsay introduced through Officer Kaminski.
>
> III. The trial court violated Rueben Bell's constitutional rights by imposing a Reagan Tokes sentence under S.B. 201.

**Discussion**

**A. Manifest Weight of the Evidence**

{¶ 9} In the first assignment of error, Bell contends that his conviction was against the manifest weight of the evidence.

{¶ 10} "[A] manifest weight challenge questions whether the state met its burden of persuasion." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Bell claims that he was either the victim of mistaken identity or Mitchell and Johnson are trying to accuse Bell of doing something he did not do. He claims that Mitchell was an "untrustworthy" witness; therefore, his identification of Bell "is equally untrustworthy."

{¶ 12} We note that in a manifest-weight review, the weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Thus, in reviewing criminal manifest-weight-of-the-evidence challenges, appellate courts must be mindful of the presumption in favor of the finder of fact and defer to the factfinder's resolution of conflicting testimony if the greater amount of credible evidence supports the verdict. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶ 13} Upon review, Bell's conviction for felonious assault was not against the manifest weight of the evidence. Mitchell testified that he was staying with Johnson at a hotel and the couple had been changing their location to hide from Bell, Johnson's estranged husband. On the day in question, Mitchell was loading groceries in the trunk of Johnson's car when, according to Mitchell, he was hit from behind by a car driven by Bell. Mitchell knew Bell well; he had known him for 15 years and had previously bought drugs from him. Johnson also identified Bell as the perpetrator.

{¶ 14} The neutral witness in this case, West, was staying at the hotel next door, where Johnson's car was parked. He was outside near his own car when he heard a "loud smack," turned around and saw a car backing up:

> West: "I remember getting out the car, and I just remember hearing a loud smack. And it caused me to literally just turn around. I didn't know what it was, I just turned around, and I saw a white sedan backing up, it was a four door, and it was an African American man, dark skinned man just back up. He kind of paused, and then he just — I remember when he paused, I was like I better get the license plate."

{¶ 15} West testified he memorized the car's license plate and relayed it to police. West saw some broken bottles and groceries on the ground; items that Mitchell dropped when he was hit. West further testified that Mitchell and Johnson identified Bell as the driver of the car that hit Mitchell.

{¶ 16} Officer Kaminski testified that he responded to the scene, took statements from Mitchell, West, and Johnson, and that Mitchell and Johnson identified Bell as the man that hit Mitchell. Officer Kaminski noted that Mitchell

had minor injuries and Johnson's car bumper was dented. He further testified that during his investigation he learned that Bell called the North Olmsted police upset that a rock had been thrown at his vehicle. Mitchell admitted he threw a rock at Bell's car as Bell drove off.

{¶ 17} Although Bell contends that Mitchell was an "untrustworthy" witness, the trial court heard Mitchell's testimony, his admissions regarding his criminal history and current drug use and dealing, and Bell's counsel thoroughly cross-examined Mitchell regarding the event. The trial court, as trier of fact, was in the best position to weigh the evidence, including the credibility of the witnesses. The unaffiliated witness, West, clearly indicated that this incident happened and all three people could see Bell's face as he was backing his car away from the scene.

{¶ 18} Based on this record, we conclude the trial court did not clearly lose its way or create a manifest miscarriage of justice in returning a verdict finding Bell guilty of felonious assault. Thus, his conviction is not against the manifest weight of the evidence.

{¶ 19} The first assignment of error is overruled.

## B. Hearsay Evidence

{¶ 20} In the second assignment of error, Bell argues that the trial court erred in considering improper hearsay testimony from West and Officer Kaminski.

{¶ 21} The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Guyton*, 8th Dist. Cuyahoga No. 88423, 2007-Ohio-2513, ¶ 11, citing *State v. Laboy*, 8th Dist. Cuyahoga No. 87616, 2006-Ohio-

5927. A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices. *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 22} "Evid.R. 801(C) defines 'hearsay' as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Thomas*, 8th Dist. Cuyahoga No. 106194, 2018-Ohio-2841, ¶ 27, quoting Evid.R. 801(C). "Evid.R. 802 generally deems hearsay inadmissible unless the evidence falls under a specific exception to the hearsay prohibition." *Thomas* at *id.*, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180.

{¶ 23} Here, the trial court stated that the statements West relayed in court that were made by Johnson and Mitchell were made immediately after the incident while they were still under the excitement of the event. The state posits that the statements were admissible as exceptions to hearsay under Evid.R. 803(2), excited utterances. We find that they are admissible as either excited utterances under Evid.R. 803(2) or Evid.R. 803(1) as present sense impressions.

{¶ 24} Evid.R. 803(1) allows the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Pursuant to Evid.R. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement

caused by the event or condition" is not excluded by the rule against hearsay. With respect to present sense impressions, "the declarant need not be under 'stress of excitement caused by the event or condition,' as required for an excited utterance; rather, the primary focus is whether the statement was contemporaneous with the perceived event or condition." *State v. Crowley*, 2d Dist. Clark No. 2009 CA 65, 2009-Ohio-6689, ¶ 14.

{¶ 25} This court has held that the hearsay exceptions for present sense impressions and excited utterances reflect "an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event" and that "the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter." *State v. Ellington*, 8th Dist. Cuyahoga No. 84014, 2004-Ohio-5036, ¶ 10, citing *Cox v. Oliver Mach. Co.*, 41 Ohio App.3d 28, 534 N.E.2d 855 (12th Dist. 1987). Thus, "[b]y making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived * * * ." *Ellington* at *id*, citing *Cox* at *id*.

{¶ 26} Mitchell testified he was shocked when he was hit from behind by a car while loading groceries in the trunk of his girlfriend's car.[2] West testified that

---

[2] Mitchell was available and testified, but, in accordance with Evid.R. 803, "present sense impressions and excited utterances are not excluded by the hearsay rule, even though

the scene was "chaos" with broken bottles and groceries on the ground. West described Mitchell as "upset," when Mitchell yelled "this ain't the first time he's done this, you know, I'm sick of this. We need to call the police." West testified Johnson was "kind of just shocked I guess, in awe of it or shocked" when she identified the driver of the car as "her husband or ex-husband." Officer Kaminski also described Johnson as "nervous and scared" when she identified Bell as the driver of the car, but she became "more calm" as time went on.

{¶ 27} Based on this record, we find that the state's argument has merit, and the cited exceptions apply in this case. Moreover, although not raised by the parties, we further find that the statements that Johnson and Mitchell made to West where they identified Bell as the driver of the car and to which West testified about in court were not stated by West to establish the truth of the matter asserted, i.e., they were not stated to prove West was identifying Bell as the perpetrator. West testified he did not know Bell.

{¶ 28} Bell further claims that the trial court improperly relied on hearsay evidence in admitting Officer Kaminski's testimony regarding the voicemail Bell left for a North Olmsted police officer. During direct examination, the state questioned Officer Kaminski about his investigation and what steps he took after Bell was identified as the driver of the car that hit Mitchell. The officer testified that he found Bell's information, called him, and left a voicemail. He subsequently learned that

---

the declarant is available as a witness." *State v. Given*, 7th Dist. Mahoning No. 15 MA 0108, 2016-Ohio-4746, ¶ 25.

Bell "called North Olmsted police about being upset with the rock being thrown at his vehicle" and left a message on another officer's voicemail. After Officer Kaminski learned of the voicemail message, he called Bell a second time requesting he "respond to our station so we can make a report regarding his — the rock being thrown at his vehicle." According to Officer Kaminski, he never heard from Bell.

{¶ 29} The officer's testimony was offered to explain his course of investigation, i.e., why he called Bell a second time and asked Bell to come to the station to file a report. "Where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987), citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). This testimony was part of a line of questioning in which the state elicited from the witness about the course of the investigation. We therefore find that Officer Kaminski's testimony was admissible and properly considered by the trial court at this bench trial.

{¶ 30} Accordingly, the second assignment of error is overruled.

## C. Reagan Tokes

{¶ 31} Bell was sentenced to an indeterminate sentence of two to three years in prison pursuant to the Reagan Tokes Law. At sentencing, the trial court noted defense counsel's objection to the imposition of this law, properly preserving the issue for appeal. In the third assignment of error, Bell argues that the trial court erred in sentencing him under the Reagan Tokes Law because it is unconstitutional.

He raises the same arguments raised by many appellants: ripeness, due process, separation of powers, and right to trial by jury.

{¶ 32} Bell's arguments are overruled pursuant to this court's en banc decision in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, which overruled the challenges presented in this appeal to the Reagan Tokes Law (enacted through S.B. 201). The arguments presented in this case do not present novel issues or any new theory challenging the constitutional validity of any aspect of the Reagan Tokes Law left unaddressed by *Delvallie*.

{¶ 33} Therefore, the third assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN T. GALLAGHER, J., CONCUR


N.B. Judge Eileen T. Gallagher joined the dissent by Judge Lisa B. Forbes in *Delvallie* and would have found that R.C. 2967.271(C) and (D) of the Reagan Tokes Law are unconstitutional.